JUL 30 2021 PM2:10
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AMENDED

CIVIL RIGHTS COMPLAINT

**Dongmei Li**

3:21-CV-00996-VAB

**Plaintiff**

v.

The State of Connecticut,
Connecticut Department of Public Health,
Connecticut Department of Mental Health and Addiction Services,
Miriam E. Delphin-Rittmon
Richard Colangelo, Joseph T. Corradino,
Town of Fairfield, Fairfield Board of Education,
Anthony Formato, Morgan Rhodes,
Fairfield Police Department,
Chris Lyddy, Lance Newkirchen, Kovacs, Richard Peck,
Fairfield Emergency Communications Center,
American Medical Response Inc.,
Bret Jackson, Mackenzie D'Iorio, James P Zwally,
St. Vincent's Medical Center,
Cynthia Anderson, Andrea E Bertolozzi, Rachel Bouteiller,
Cynthia Campbell, Fayola Carmichael, Margaret Chuckta,
Kellie Clomiro, Lori Dube, Patricia Galich, Barbara Mcconachie,
Melissa Ortiz, Christine Pannone, Bonnie Perez,
James Richards, Nadine Ritt, and Jernesha Wright,
Clifford Schwartz, Sharon Hasbani, Audrey Harrell,
Ryan Lieberman, Bujji B Surapaneni, Dora Orosz,
Christopher M Orelup, Simon A Ovanessian,
Kelechi Ogbonna, Roger Jou, Rahul Gupta,
Bruny Jacques Germain, Lilliana Hernandez ,
Jingchun Liu, Lei Li, Stephanie A. Sirois,
Amanda M. Sandrew, Raj K. Bansal,

**Defendant(s).**

## A. PARTIES

1. Dongmei Li is a citizen of Connecticut who presently resides at 4539 Black Rock Tpke, Fairfield 06824.
2. Defendant the State of Connecticut, is located at % Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106
3. Defendant the Connecticut Department of Public Health, is located at 410 Capitol Ave, Hartford, CT 06134. St. Vincent's Hospital is one of its agencies.
4. Defendant State of Connecticut Department of Mental Health and Addiction Services, it's headquarter is located at 410 Capitol Ave, Hartford, CT 06134; and it's Bridgeport office is located at 1635 Central Ave, Bridgeport, CT 06610 (203) 551-7400. Greater Bridgeport Community Mental Health Center, is located at 1635 Central Avenue, Bridgeport, CT 066610.
5. Defendant Miriam E. Delphin-Rittmon is the commissioner of Connecticut Department of Mental Health and Addiction Services, it's headquarter is located at 410 Capitol Ave, Hartford, CT 06134. On May 29, 2021 I emailed to report my case and requested about Connecticut General Statute 17a-506, however I received no response.
6. Defendant Richard Colangelo is the Chief State Attorney of Connecticut, at 300 Corporate Place, Rocky Hill, CT 06067
7. Defendant Joseph T. Corradino, is a state attorney for the Judicial District of Fairfield, at 1061 Main Street Bridgeport, CT 06604, responded to me by a letter on November 16, 2020 stating that he found no wrong-doings by Fairfield Police. However he failed to identify the illegal actions I pointed out in the complaint email I sent to the State's Attorney on October 21, 2020. His letter also directed me, the victim, back to the local police department who were the criminal defendants of my complaint.
8. Defendant Town of Fairfield is a municipal corporation organized under the laws of the State of Connecticut, located at 611 Old Post Road, Fairfield, CT 06824.
9. Defendant Fairfield Board of Education, is located at 501 Kings Hwy E, Fairfield, CT 06825
10. Defendant Anthony Formato is the principal. Defendant Morgan Rhodes is the counselor of Thomlinson Middle School, located at 200 Unquowa Rd, Fairfield, CT 06824. In 2016 to retaliate my complaint the defendants conspired to defame and frame me as a person with psychiatric disability. Together with defendant Lance Newkirchen they illegally detained my daughter and forced me to St. Vincent's Hospital. He made false police reports on September 26, 2016 and on June 30, 2020.
11. Defendant Fairfield Police Department, is the police department under Town of Fairfield, located at 100 Reef Rd, Fairfield, CT 06824. It is a Primary and Supplemental First Responder sponsored by the St. Vincent's Medical Center Department of Emergency Medicine, Division of EMS.

12. Defendant Chris Lyddy, was Fairfield Police Department Chief of Police, at 100 Reef Rd, Fairfield, CT 06824. On January 16, 2021 I reported my case via email, received an acknowledgement email, however, no further responses.
13. Defendants Lance Newkirchen and Kovacs were Fairfield Police Department officers (at 100 Reef Rd, Fairfield, CT 06824) who were acting under color of state law and in their capacities as town police officers at all relevant times. On September 26, 2016 together with defendant Tomlinson Middle School counselor Morgan Rhodes he detained my daughter. He called AMR in the name of 911. Together with defendant Brett Jackson he illegally kidnapped me and sent me to St. Vincent's Hospital. In the 2016 and 2020 police reports he made multiple wrong statements.
14. Defendant Richard Peck is a Fairfield Police Department officer (at 100 Reef Rd, Fairfield, CT 06824) who was acting under color of state law and in their capacities as town police officers at all relevant times. On June 29, 2020 he called AMR in the name of 911. Then he kidnapped me to St. Vincent's Hospital. He fabricated a police emergency examination request and made multiple wrong statements in his police report.
15. Defendant Fairfield Emergency Communications Center (ECC) is a centralized 911 call center and answering point for both emergency and non-emergency requests for Police, Fire and Medical services in the Town of Fairfield, Connecticut. The Emergency Communications Center is located within the Fairfield Police Department's Headquarters at 100 Reef Rd, Fairfield, CT 06824.
16. Defendant American Medical Response Inc., later referred to as "AMR", is located at 335 Connecticut Ave, Bridgeport, CT 06607. The Town of Fairfield at 611 Old Post Road Fairfield, CT 06824 has a multi-faceted Emergency Medical Response System (EMS). The current EMS provider is AMR.
17. Defendant Bret Jackson is an employee of AMR located at 335 Connecticut Ave, Bridgeport, CT 06607 He was acting under color of state law and Code of Federal Regulations and in their capacities as AMR employees at all relevant times. On September 26, 2016 the defendant together with defendant Lance Newkirchen kidnapped me and transferred me to St. Vincent's Hospital. He illegally administered harmful psychiatric medicine to me without informed consent. He illegally signed in the Facility Signature section and certified that I "was physically and mentally incapable of signing".
18. Defendant Mackenzie D'Iorio, is an employee of AMR located at 335 Connecticut Ave, Bridgeport, CT 06607. He was acting under color of state law and Code of Federal Regulations and in their capacities as AMR employees at all relevant times. On June 29, 2020 together with defendant Richard Peck he kidnapped me to St. Vincent's Hospital. He fabricated a medical report and made illegal signatures.
19. Defendant St. Vincent's Medical Center, later referred to as "SVMC", also called St. Vincent's Hospital, is located at 2800 Main St, Bridgeport, CT 06606. SVMC became part

of Hartford Healthcare in October 2019. It is a fully Catholic hospital. The following SVMC facilities were involved in this allegation:

(1) St. Vincent's Medical Center Department of Emergency Medicine, also referred to as "ED", is located at 2800 Main St, Bridgeport, CT 06606.

(2) St. Vincent's Medical Center Behavioral Health Services, also referred to as "BHU", is located at 2800 Main St, Bridgeport, CT 06606.

(3) St. Vincent's Behavioral Health Services, Westport campus, also referred to as "WPC", is located at 47 Long Lots Rd in Westport, CT, which is also called Hallbrook Hospital.

(4) Greater Bridgeport Diagnostics Llc which is part of SVMC at 2800 Main St, Bridgeport, CT 06606.

20. Defendants Cynthia Anderson, Andrea E Bertolozzi, Rachel Bouteiller, Cynthia Campbell, Fayola Carmichael, Margaret Chuckta, Kellie Clomiro, Lori Dube, Patricia Galich, Barbara Mcconachie, Melissa Ortiz, Christine Pannone, Bonnie Perez, James Richards, Nadine Ritt, and Jernesha Wright, are employees of SVMC at 2800 Main St, Bridgeport, CT 06606.
21. Defendant Clifford Schwartz, is a doctor associated with SVMC Emergency Department at 2800 Main St, Bridgeport, CT 06606. On September 26, 2016 the defendant fabricated a medical record and maliciously diagnosed the plaintiff as psychiatrically disabled.
22. Defendant Sharon Hasbani is a doctor associated with SVMC BHU at 2800 Main St, Bridgeport, CT 06606. On September 26-27, 2016, the defendant illegally admitted the plaintiff as an involuntary inpatient, prescribed harmful psychiatric medicines and maliciously issued a physician's emergency certificate and diagnosed a healthy person as gravely disabled.
23. Defendant Audrey Harrell, a doctor associated with SVMC WPC at 47 Long Lots Rd in Westport, CT, maliciously wrote a letter of libel to Westport Probate Court Judge on July 2, 2020.
24. Defendant Ryan Lieberman, a doctor associated with SVMC WPC at 47 Long Lots Rd in Westport, CT, maliciously wrote a letter of libel to Westport Probate Court Judge on July 7, 2020.
25. Defendant Bujji B Surapaneni, a doctor associated with SVMC WPC at 47 Long Lots Rd in Westport, CT, maliciously diagnosed a healthy person as paranoid delusion, illegally prescribed harmful psychiatric medicine, caused forced medication without informed consent three times on 6/30, 7/5 and 7/8, maliciously issued Inpatriate Stay Certification three times on 7/6, 7/13 and 7/20, maliciously wrote a letter of libel to Westport Probate Court Judge on July 3, 2020, filed a petition to Westport Probate Court with the intention to violate my civil rights.
26. Defendant Dora Orosz, a doctor associated with SVMC WPC at 47 Long Lots Rd in Westport, CT, illegally prescribed harmful psychiatric medicines.
27. Defendant Christopher M Orelup, is a doctor associated with SVMC Emergency Department at 2800 Main St, Bridgeport, CT 06606. The defendant illegally fabricated fake COVID testing records, abused the plaintiff by prescribing harmful potassium

medicine, prescribed harmful psychiatric medicines, diagnosed a healthy person as psychiatric disability, and abused the plaintiff by leaving a urine cup together with food.

28. Defendant Simon A Ovanessian is a doctor associated with SVMC BHU at 2800 Main St, Bridgeport, CT 06606. The defendant illegally admitted the plaintiff to WPC, fabricated medical records, and illegally issued a Inpatient Stay Certificate on 6/29/2020.
29. Defendant Kelechi Ogbonna, is a doctor associated with SVMC WPC at 47 Long Lots Rd in Westport, CT. On June 30, 2020 he used false excuses to make a restraint order to restrain me and forced me to take medication against my wish with defendant James Richards and Cynthia Campbell.
30. Defendant Roger Jou is a doctor associated with SVMC at 47 Long Lots Rd in Westport, CT. As a doctor at-present he took no intervening action when I was forced to take medication on July 5, 2020.
31. Defendant Rahul Gupta is a doctor associated with SVMC at 2800 Main St, Bridgeport, CT 06606.
32. Defendant Bruny Jacques Germain is a doctor associated with SVMC at 2800 Main St, Bridgeport, CT 06606.
33. Defendant Lilliana Hernandez is a doctor associated with SVMC at 2800 Main St, Bridgeport, CT 06606.
34. Defendant Liu Jingchun is an employee of SVMC WPC at 47 Long Lots Rd in Westport, CT.
35. Defendant Lei Li is the Clinical Laboratory Director of The Jackson Laboratory at 10 Discovery Drive, Farmington, CT 06032
36. Defendant Stephanie A. Sirois, a Clinical Social Worker, resides at 795 Tolland Tpke, Manchester, CT 06042.
37. Defendant Amanda M. Sandrew, M.D., 9 Burr Road, Westport, CT 06880
38. Defendant Raj K. Bansal, M.D., % 609 Observer Hwy., Apt. 503, Hoboken, NJ 07030-6868

**B. JURISDICTION**

1. Jurisdiction is asserted pursuant to (CHECK ONE)

X 42 U.S.C. § 1983 (applies to state defendants)

_ ***Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics***, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal defendants)

2. Jurisdiction also is invoked pursuant to 28 U.S.C. § 1343(a)(3). (If you wish to assert jurisdiction under different or additional statutes, you may list them below.)

**Reference documents:**

Aetna Medical Record
AMR 2016 Record
AMR 2020.0629 AM Record
AMR 2020.0629 Noon Record
Fairfield Police Report CASE/INCIDENT REPORT CFS NO 1600038703
Fairfield Police Report CASE/INCIDENT REPORT CFS NO 2000021229
Nelson Ambulance 2016.0927 Record
Westport Probate Court Decree
SVMC 2016 - St. Vincent's Hospital medical records for 2016.
SVMC 2020 - St. Vincent's Hospital medical records for 2020.

## C. NATURE OF THE CASE

**SUMMARY**

1. On September 26, 2016, I visited my daughter's school, Tomlinson Middle School, to complain about Asian discrimation. I was framed by the Principal defendant Anthony Formato and school counselor defendant Morgan Rhodes. The defendants conspired with the defendant Fairfield police officer Lance Newkirchen to illegally detain and threaten my 13 year old daughter. When I went back to the school to complain about their violation of our constitutional rights, the defendants conspired with AMR, used violence to force drugs on me, kidnapped me and sent me to SVMC. The defendants fabricated fake medical records to certify that I had psychotic illness. On September 27 I was again drugged and sent to WPC and was illegally imprisoned until September 30. AMR and SVMC achieved financial gains through their fraudulent actions.

2. I went to complain in Fairfield town hall, Fairfield Police Department, and WPC, but I was treated with indifference and discrimination.

3. On June 29, 2020 SVMC, AMR and Fairfield Police Department conspired again, kidnapped me to SVMC, then transferred to WPC and illegally imprisoned me through July 21, 2020. The defendants fabricated voluntary commitment documents, forced psychiatric medicines even after I informed them of my pregnancy. The defendants abused the process and filed a malicious petition to the Westport Probate Court with the intention to illegally commit me involuntarily for long term, to force using medication without informed consent, and to force a conservator. Based on a Probate Court decree after a hearing I was released on July 21, 2020.

4. After this second event I wrote to file complaints with the following authorities:
    - The Joint Commission
    - Connecticut Chief State Attorney Richard Colangelo
    - CT Department of Public Health
    - CT Dept of Public Health, Practioner Investgations Unit
    - Fairfield Police Department Chief
    - Department of Mental Health and Additive Services
    - Department of Social Services fraud reporting hotline
    - Attorney General's Antitrust and Government Program Fraud Department

5. The defendants severely violated my rights under the U.S. Constitution and Amendments, Connecticut State Constitution, federal and state laws.

**2016 Nature of Case**

**Summary of Time and location, addresses**

| | |
|---|---|
| 9/26/2016,<br>about 9:30-10:00am | The plaintiff went to Tomlinson Middle School 200 Unquowa Rd, Fairfield, CT 06824, talked with the defendant Anthony Formato at Principal Formato's office, and asked about social study and health study curriculum. Defendants Anthony Formato and Morgan Rhodes walked me out to the school door, Morgan Rhodes walked me to my car. |
| 9/26/2016,<br>about 10:00-11:43 | I went to the Board of Education at 501 Kings Hwy E, Fairfield, CT 06825 to complain. Per Fairfield Police Report, at 10:02 defendant Morgan Rhodes called and made a false report to the Fairfield police department. Defendant Lance Newkirchen and Kovacs arrived at the school. Defendants Rhodes and Newkirchen detained my daughter at the counselor's office and threatened her. I came back to the school and found out my daughter was detained by police, so I asked to make sure my daughter was safe. Defendants Newkirchen, Rhodes and Kovac intercepted me. They also called other teachers and social workers. Defendant social worker Stephanie Sirois came to talk with me. |
| 9/26/2016<br>11:43-12:17 | Tomlinson Middle School,<br>Front of school building,<br>200 Unquowa Rd, Fairfield, CT 06824 |

| | |
|---|---|
| | At 11:43 the police called AMR in the name of 911.<br>At 11:50 Per the AMR report I was under "Psychiatric hold status", "Status involuntary", this was when I was still talking with Stephanie Sirois.<br><br>My husband came, denied that I had any mental issues, and asked to take me home, but was refused by defendant Newkirchen. |
| 9/26/2016<br>12:17-12:30 | At 12:17 defendants Newkirchen, Kovac, Brett Jackson, and James Zwally forced me with violent physical force by holding my neck and arms and legs, onto a stretcher and then imprisoned me in the AMR Ambulance. Defendant Brett Jackson injected some drug MIDAZOLAM HCL 5MG/ML VIAL (2ML) into my body, this made me unconscious immediately. They transferred me to St. Vincent's Hospital.<br><br>Defendant Newkirchen rode in the ambulance. Defendant Kovac drove separately to the hospital. Defendant Brett Jackson signed the facility signature section under the law 42 C.F.R. 424.36(b)(1)-(3). |
| 9/26/2016<br>12:30 | At 12:30 without a legal authorization, the defendant AMR ambulance arrived at the SVMC Emergency Department at 2800 Main St, Bridgeport, CT 06606.<br><br>At 12:37 the defendant SVMC admitted me and triaged me as "09-Admitted as Inpatient", which completed at 13:05. Defendant Melissa Ortiz created false encounter information.<br><br>At 12:40 defendant Clifford Schwartz was assigned as my ED Provider, and falsely diagnosed me as "Acute psychosis; Paranoid delusion; Psychosis", and conducted illegal involuntary inpatient treatment including ordering inpatient psychiatric medications.<br><br>Defendant Kelli Clomiro signed on the AMR document in the destination facility section at 12:46. She also signed to represent St. Vincent's Hospital in the Facility Signature section.<br><br>At 12:58 SVMC 2016 page 12 shows a urine pregnancy test was done. I was still unconscious at this time.<br><br>At 13:16 per AMR record, instead of a social-worker the defendant SVMC abused the process and authorized AMR for transportation (SVMC 2016 P5), this made the illegal |

| | |
|---|---|
| | transportation appear to be legal.<br><br>Defendant SVMC treated me as an involuntary inpatient and made false medical records, and did a strip search and X-ray on me.<br><br>I was unconscious through this entire time.<br><br>Defendant SVMC in the name of Greater Bridgeport Diagnostics Llc made false claims to my medical insurance company for items such as X-ray, lab work, drug test for "Brief psychotic disorder". |
| 9/26/2016 13:30 - 9/27/2016 13:08 | SVMC BHU 2800 Main St, Bridgeport, CT 06606<br>At 13:30 while I was still unconscious all my clothes were removed. I was changed to a paper gown and transferred to BHU.<br><br>On 9/27 at 9:08 defendant Sharon Hasbani admitted me as "inpatient" into SVMC Westport Campus. He ordered psychiatric medicines. At 11:39 defendant Patricia Galich forced me to take medicine. When I refused, she called several other males to push me to the room corner and she injected a shot to me. I lost consciousness. I might have been raped.<br><br>Defendant Sharon Hasbani falsified a Physician's Emergency Certificate (SVMC 2016 P78). He certified me, a healthy person as "disabled", he failed to adhere to professional ethical standards. |
| 9/27/2016 13:08-13:27 | At 11:51 the defendant SVMC called Nelson Ambulance by BLS type.<br>At 12:55 Nelson Ambulance EMT-B Benjamin Trister arrived at SVMC. I was unconscious and laid on a stretcher.<br>At 13:27 Nelson Ambulance transported me to SVMC WPC. My husband was at SVMC, he wanted to meet me and take me home but was refused. He cried there. SVMC was cruel and ruthless, they lost humanity. |
| 9/26/2016 13:27-9/30/2016 | WPC, 47 Long Lot Road, Westport, CT |

6. On September 26, 2016, I went to my daughter's school Thomlinson Middle School to complain about the discrimination against Asians in school education and asked for a sociology and health education curriculum. I met with and talked to the defendant principal Anthony Formato. He was very rude. The counselor Morgan Rhodes walked me out. Then I went to the Fairfield school board of education to complain.

7. In order to take revenge on me, defendant principal Anthony Formato asked defendant counselor Morgan Rhodes to make a false police report. They falsely, maliciously and willfully reported to Fairfield Police that I went to school and complained that my daughter was going to kill me. Police officers Lance Newkirchen and Kovacs arrived at the school. Defendant Lance Newkirchen and defendant Morgan Rhodes detained my daughter in the counselor's office, and threatened her that your mother reported you wanted to kill her. Defendants Lance Newkirchen, Kovacs, Anthony Formato, Morgan Rhodes, are accomplices. They violated U.S. code 241 Conspiracy Against Rights.

8. After visiting the Fairfield board of education to complain, I came back to the school and saw the police officers and the school detaining my daughter, so I asked to see my daughter to ensure her safety. Defendant Lance Newkirchen, Defendant Kovacs and Defendant School Counselor Morgan Rhodes came out and stopped me from doing so. They violated the constitutional rights of my daughter and myself.

9. In order to drive me away from school, the police and the principal conspired to send me to a mental hospital. They called a teacher and a social worker to talk to me in turn. Social worker Stephanie Sirois came and talked to me. At 11:43am, even before the social worker completed her evaluation, either someone from the school or the police called AMR in the name of 911. At 11:50 AMR arrived at the site, I was put to psychiatric involuntary hold status. They violated Connecticut's psychiatric involuntary commitment law.

10. My husband came. Defendant Newkirchen detained him, and asked him to talk about my psychiatric problems which I never had, so they could use it as false evidence. My husband informed the police that I have no mental issues and wanted to take me home. He requested to bring me home. Defendant Newkirchen refused my husband's request and said they will bring me to St. Vincent's Hospital.

11. At 12:11 I finished the conversation with the social worker Stephanie Sirois. I saw my husband, I walked towards him and wanted to talk to him, hoping to use his English to explain clearly. Defendants Lance Newkirchen and Kovacs, Bret Jackson and James P. Zwally came up to me, violently pulled me, and one of them choked me by the neck. Several men pulled me to the ambulance, a person choked my neck and pressed me on the ambulance stretcher. SVMC medical record shows I "has 2 bruises around the neck by NR Laurie Waldo-Hunter, RN on 2:27pm 9/26/2016, SVMC 2016 page 18). Defendant AMR staff Bret Jackson injected some medicine into my body (Midazolam HCL 5MG/ML)

and I lost consciousness immediately. My shoes were pulled off and broken, my bag and belongings inside including my cell phone, my ID cards, medical insurance card and credit cards were opened and searched and passed to SVMC later. My cash of $103.15 was lost and never recovered. (SVMC 2016 page 48). Defendants Lance Newkirchen, Kovacs and Bret Jackson are accomplices, they violated U.S. code 241 Conspiracy against rights.Their actions of assault and battery and forced using medication without consent violated my constitutional and civil rights. Their unlawful and wrongful imprisonment actions were intentional tort. They violated my rights under the fourth amendment of the constitution and federal law. This was the first time I ever experienced violence during my entire life. Their intentional torts inflicted serious psychiatric trauma on me. I experience Post traumatic stress disorder after being treated with such violence.

12. Defendant Newkirchen rode in the ambulance, defendant Kovacs drove and followed the ambulance to St. Vincent's Hospital at 2800 Main Street, Bridgeport. But my husband was not allowed to follow. AMR shows two staff members, defendant Bret Jackson who signed on the AMR report and defendant James P Zwally who didn't sign. They illegally transferred me without any female staff. Because I lost my consciousness, they might have raped me in the ambulance. They violated the Violence Against Women Act of 1994. I requested video recordings but never received any response. Their intentional torts inflicted serious psychiatric trauma on me. I experience Post traumatic stress disorder after being treated with such violence.The defendants had violated 42 C.F.R. section 482.13(c)(3) (The patient has the right to be free from all forms of abuses or harassment)

13. At 12:46, the ambulance arrived at St. Vincent's Hospital. ER department RN Kellie Clomiro signed on the AMR report destination section. The defendant made multiple false medical records to cover their illegal actions by SVMC, the police and AMR.

14. This was an unlawful involuntary commitment without probate court warrant. This is also unlawful transportation without LSCW's authorization. Based on the police report, it was clear that defendant Lance Newkirchen and defendant Anthony Formato wanted to force me to a psychiatric hospital for evaluation. They abused the process and falsely imprisoned me. They clearly knew it was illegal so the defendant Lance Newkirchen made libel in the police report that it was a 211 call and my husband helped them to force me to the ambulance, because I visited the FBI to report something.

15. AMR also understood its actions were illegal, so they falsified its report as "Destination Decision: Patient and family request". But the AMR L093P1 Patient Care Report (Case

#12806099) did not have any signature from myself or my family at 12:17. Defendant Brett Jackson knowing that I was unconscious at the moment because he had forcibly given me medicine injection (Midazolam HCL 5MG/ML), he still signed to certify that I was "physically or mentally incapable of signing". He was also aware of my husband being present at the moment, he still signed as "none of the individuals listed in 42 C.F.R. 424.36(b)(1)-(3) ". Their malicious intention was to throw me to St. Vincent's Hospital against my own and my family's wishes. The AMR report showed that I had no medical insurance. Later they made claims to my insurance company using me as an "outpatient". This was medical fraud.

16. When I was sedated and transported to St. Vincent's Hospital at 2800 Main Street, Bridgeport at 12:30, defendant Kellie Clomiro RN as the representative of St. Vincent's Hospital signed in the Facility Signature section.

17. Defendant St. Vincent's Hospital clearly understood this was an illegal involuntary commitment, defendant Melissa Ortiz falsified medical records "Encounter Information" with Admit Reason as "Psych Eval"; Admit Source as "Self (Non-HC Facility So...; Admit Type as "Emergency"; and PCP as "NO PCP, PT States". They wrongfully imprisoned me as an "inpatient". They violated my constitutional right. Later they made claims to my insurance company using me as an "inpatient". This was medical fraud. Defendants St. Vincent's Hospital, Lance Newkirchen, Kovacs, Bret Jackson, Anthony Formato, Morgan Rhodes, are accomplices, they violated U.S. code 241 Conspiracy against rights.

18. Defendant Clifford Schwartz MD became my ED provider at 9/26/2016 12:40:11 and made a false diagnosis "Acute psychosis; Paranoid delusion; Psychosis", and ordered inpatient antipsychotic medications: Ativan benadryl, Haldol without consent. He also made false statements on the medical record such as "History source: Patient, spouse, EMS", even though I and my spouse never spoke with the defendant. He just copied the libel from police reports and medical records from AMR and SVMC. Defendants Clifford Schwartz MD, Lance Newkirchen, Kovacs, Bret Jackson, Anthony Formato, Morgan Rhodes, are accomplices, they violated U.S. code 241 Conspiracy against rights.

19. Defendant Clifford Schwartz MD wrote in History of Present Illness (SVMC 2016 P13): The patient presents with Brought in by ambulance status post acute agitation and aggression during a school-related incident where EMS was called. She attempted to bite paramedics and needed sedative medications. She was also brought in by police but not in police custody. EMS reports that the school stated she had paranoid delusions including that someone was attempting to poison her child by giving her a lollipop and

said that 911 would return and she became very fearful. Upon arrival in the ER she refused workup and continued to describe various incidents in a tangential way. Denies all physical complaints at this time stating she is healthy. Denies drugs and alcohol and trauma. The onset was just prior to arrival .The course/duration of symptoms is improving. The character of symptoms is no pain and not numbness. The degree at onset was severe. The degree at present is moderate. Risk factors consist of none. Therapy today: emergency medical services. Associated symptoms: none.

20. When I was unconscious the defendant SVMC Emergency Department performed a strip search. This was a tort.

21. Based on SVMC 2016 page 12, a Urine Pregnancy Test POC was ordered at 12:58:0 EDT. I was still sedated and unconscious at this time. Therefore I might have been sexually assaulted. The defendants had violated 42 C.F.R. section 482.13(c)(3) (The patient has the right to be free from all forms of abuse or harassment).

22. At 13:05 Defendant Kellie Clomiro RN made the following false medical records: Chief Complaint: PT BIBA with a request for a psychiatric eval by Social Workers on scene. PT arrived at her kids school paranoid, hyperverbal, stating that someone was trying to poison her kids. The patient's husband is here & he states she has no history.

23. The statement above was wrong. The transportation was not requested / authorized by the Social Worker. From the AMR 2016 medical record, St. Vincent's Hospital authorized the transportation at 1:16PM. (SVMC 2016 Page 5) The time was after me being transported to SVMC at 12:30.

24. We didn't find the social worker's document from AMR 2016 records. We found the social worker's document by defendant Stephanie Sirois in SVMC 2016 page 47. However this was a false LCSW certificate. Defendant Stephanie Sirois did not check either of the boxes for "The person examined is gravely disabled" or "The person examined is dangerous to himself or herself or others". Therefore it does not meet the requirement for emergency confinement law. Also, the following information was left empty on the certificate: Transportation Date; Transportation TIme; Hospital Sent to; DMHAS Certified.

25. However, when I was talking to defendant Stephanie Sirois I explained to her that because the school had Asian discriminations I went to the school to request curriculums of social studies and health studies. To retaliate against me the police and

the school falsely imprisoned my daughter so I worried about my daughter's safety. However, defendant Stephanie Sirois ignored my explanations but only used false statements made by the school and the police with racial profiling. She made libels about me that "paranoid, disorganized, loud, rambling". Her full descriptions can be found on SVMC 2016 page 47.

26. Defendant Stephanie Sirois never spoke to my husband however she wrote on the report that "spouse states pt has been paranoid, he denies any medications, sleep ↓, appetite ↓". She made libels.

27. Defendants Stephanie Sirois, Lance Newkirchen, Kovacs, Bret Jackson, Anthony Formato, Morgan Rhodes, are accomplices, they violated U.S. code 241 Conspiracy against rights.

28. At 13:05 Defendant Kellie Clomiro RN copied the libels from LCSW certificate and made the following false ED Triage record: Hallucinations/Delusions: Yes.

29. Defendant Kellie Clomiro was aware that I was sedated by AMR but she still made such records and to defame me that I had paranoid delusions so they could falsely imprison me. Defendants Kellie Clomiro RN, Stephanie Sirois, Lance Newkirchen, Kovacs, Bret Jackson, Anthony Formato, Morgan Rhodes, are accomplices, they violated U.S. code 241 Conspiracy against rights.

30. At 13:30 I was moved to BHU. I awoke around 3PM. I insisted that I was healthy, I had my own family PCP doctor, I had no mental illness. Because of Asian Hate I was defamed and kidnapped by the police and the school to the hospital. I was forced to take medicine illegally. I needed a lawyer. I wanted to go home. At this time my husband talked to SVMC and showed the same intention. (As noted on SVMC 2016 page 17 and 18). However SVMC refused all requests from me and my husband. They illegally imprisoned me in the hospital and violated my constitutional right.

31. I had skin infections due to a combination of being forced to take medicine (Midazolam HCL 5MG/ML Vial (2ML) 5MG Intramuscular result after unchanged) by defendant Bret Jackson, and possible poison ivy. My arms were very itchy. My husband brought me my medicine but I was not allowed by SVMC to use it. Based on SVMC 2016 page 16, defendant Hernandez ordered medicine in my name but didn't bring it to me. However later SVMC filed claims to my medical insurance. This was medical fraud.

32. At BHU of SVMC, defendant Sharon Hasbani made an illegal search at 14:05, ordered and illegally administered harmful psychosis medicines without consent at 14:45 on 9/26/2016.

33. On 9/27/2016 defendant Sharon Hasbani falsified a Physician's Emergency Certificate (SVMC 2016 page 78). Calling me a healthy person as "disabled", he failed to adhere to professional ethical standards.

34. At 9:58 defendant Sharon Hasbani admitted me to SVMC as "Inpatient". Defendant Dora Orosz MD was the attending physician. (SVMC 2016 page 87, Nurse Review Patricia Galich RN 10:03 EDT).

35. On 9/27 after I woke up I was not given any food. I requested to see my husband and I requested to go home. My husband also came to the hospital and asked to see me and bring me home. But he was refused. He cried in the hospital when he was refused by the hospital to take me home. At 11:39 on 9/27, defendant Patricia Galich RN forced me to take medicine against my own wish. After I refused, she called several male staff and physically pushed me to the corner of the room and gave me an injection of medicine (Ativan, Benadryl, Haldol, SVMC 2016 page 23). I became unconscious. I was afraid that I had been sexually assaulted during this time. They violated the Violence Against Women Act of 1994. I requested video recordings but never received any response. Their intentional torts inflicted serious psychiatric trauma on me. I experience Post traumatic stress disorder after being treated with such violence. They violated my constitutional right. The defendants had violated 42 C.F.R. section 482.13(c)(3) (The patient has the right to be free from all forms of abuses or harassment)

36. At 11:51 the defendant St. Vincent's Hospital (Patricia Galich RN) called Nelson ambulance service. Call type was BLS.

37. At 12:55 Nelson ambulance crew Benjamin Trister (EMT-basic) arrived at St. Vincent's Hospital. On the ambulance medical record my information only shows name, age, sex. Weight 0 lbs. There were no physician certification statements for ambulance transportation. No patient refusal form information entered, because I was sedated.

38. The Narrative section shows the following: u/a at saint vincent's bhu er found pt 47 yr female disoriented post sedation standing in room. Pt is being transported on pec after presenting to er w/psychiatric emergency. Pt has been administered adivain, haldol, and

benadryl to sedate her for safe transport. Pt laid down on stretcher, positioned semi-fowlers, secured w/5 points. Pt instantly fell back to sleep. During transport pt rested w/ no change. I monitored breathing, but did not obtain vitals because I was concerned it would frighten the pt if she woke up with me obtaining vitals. u/a at saint vincent's of westport brought a patient directly through admissions to private room, moved pt to bed w/ dslx4 and positioned pt supine. Transferred care to a nurse. I attest that at time of transport pt was unable to sign due to her altered mental status.

39. The transportation was from 13:08 to 13:27 arriving at St. Vincent's of Westport at 47 Long Lot Rd, Westport.

40. At 13:26 Patricia Galich RN signed the Admission paper on the Assessment Forms. Report was given to: Martann RN @ WPC.

41. On the Nelson ambulance record Shannon C RN signed in the Representative Signature section for St. Vincent's Hospital of Westport.

42. St. Vincent's Hospital paid Nelson ambulance. Per Aetna medical records, SVMC made fraudulent claims to my insurance company at a rate much higher than the expenses. They achieved financial gains through transferring and confining me in WPC. SVMC conspiring with AMR and the police found commercial interests from conducting human trafficking. Later in 2020 SVMC engaged AMR to transfer me from home to SVMC Bridgeport then to WPC, because AMR can conspire with them and file claims to my insurance company directly.

43. It was human trafficking. They violated federal anti-human trafficking laws.

44. Defendant St. Vincent's Hospital was reckless and cruel against humanity. They maliciously kidnapped and crippled women. They intentionally, deliberately and willfully tort. They conducted crimes against humanity.

45. On September 27 at 14:55 defendant Dora Orosz MD made an incorrect diagnosis and treated a healthy person as psychiatrically disabled; illegally prescribed psychiatric drugs without getting the patient's informed consent. He ordered many other medicines under my name as shown on 30 pages of SVMC 2016 records (pages 123-130, 144-154, and 163-173).

46. Defendant Lilliana Hernandez MD on September 26, defendant Rahul Gupta MD on September 28, defendant Bruny Jacques Germain MD on September 30, respectively ordered cream multiple times under my name. (SVMC 2016 pages 155-156, 174-175; 143, 162and 160). I never saw any of those creams. However, they all make false claims to my insurance company.

47. On September 28, defendant Bruny Jacques Germain MD made an incorrect diagnosis and treated a healthy person as psychiatrically disabled; illegally prescribed psychiatric drugs without getting the patient's informed consent. She ordered many other medicines under my name as shown on 30 pages of SVMC 2016 records (pages 108-110, 142, 161). My skin infections were untreated through-out my entire stay. Therefore upon my release from the hospital I had to pay an emergency visit to a dermatologist for treatment of my skin infections.

48. On September 30 at 13:19 defendant Bruny Jacques Germain MD discharged me. However he kept the wrong psychiatric diagnosis in the discharge report (Acute psychosis, Contact dermatitis due to Genus Toxicodendron; Paranoid delusion; Psychosis). (SVMC 2016 page 59-62), which made a wrong psychiatric history for me.

49. Defendant St. Vincent's Hospital illegally kidnapped me, illegally confined and imprisoned me, illegally trafficked me, abused me physically and mentally, forced me with psychiatric medicine without informed consent. They falsified documents, made libel statements, made wrong psychiatric diagnosis and certificates. They conducted medical fraud. They severely violated my constitutional rights and civil rights.

**<u>2020 Nature of Case</u>**

**Summary of Time and location, addresses**

| | |
|---|---|
| 6/29/2020 4:47 - 5:34 | Home (4539 Black rock tpke, Fairfield, CT 06824) |
| 6/29/2020 5:34 - 5:42 | AMR Ambulance |
| 6/29/2020 5:42/5:47 - 11:57 | SVMC ED B17 A, 2800 Main Street, Bridgeport,CT<br>09-Admitted as Inpatient |
| 6/29/2020 11:57 - 13:27 | SVMC ED hold BHU 102 A<br>2800 Main Street, Bridgeport,CT06606 |

| | |
|---|---|
| 12:35 | Inpatient Admit date/time |
| 6/29/2020 13:27 - 13:48/14:00 | AMR Ambulance |
| 6/29/2020 13:48/14:00-7/21/2020 | SVMC WPC, 47 long Lots Rd, westport, CT 06830 |

50. Asian hate crimes are rampant in 2020. On June 29, 2020 the Floyd Police Act was submitted to Congress. On this day, St. Vincent Medical Center and AMR once again used the Fairfield police to conspire and kidnap me to St. Vincent's Medical Center for illegal detention and abuse until July 21.

51. Based on the CT Connecticut AMR (LD93P1) PATIENT CARE REPORT dated June 29, 2020 Case # 14950534, received from SVMC 2020 page 7, St. Vincent's Hospital authorized the AMR order on 06/29 at3:30 AM and printed the order on 06/29 at 04:30:18. The order was to psychiatrically involuntarily commit me to St. Vincent's hospital.

52. At 4:58 am on June 29, I called 911 to request a security inspection of my house. Defendant Richard Peck and another police officer took this opportunity to enter my yard around 5:10 am. They did not want to get to know the situation with me or inspect the house. When my husband came out, they did not allow my husband to translate for me. Instead, they restrained me and my husband separately in our yard.

53. After asking my husband a few words, at 5:14 Police officer Richard Peck abused power and said that I should be sent to St. Vincent's Hospital. My husband told me that they want to send me to St. Vincent's Hospital. I wanted to run into my house. But Richard Peck blocked my way back to my house, threatened and forced me and took me into an ambulance which had been waiting outside my yard. Another police officer was watching my husband and blocked him. Defendant RIchard Peck and defendant ARM EMT Mackenzie D'Iorio tied me to a stretcher in the ambulance. Because I just got conceived on June 25, also because I was once forced violently by Fairfield police to an ambulance and was forced upon medicine in 2016, I did not want to resist physically. In the ambulance I told them that I was pregnant, I do not want to go to St. Vincent's Hospital because this hospital abused me and stole my money in 2016, and I would like to talk to a lawyer. Their impressions appeared that my requests were ridiculous. Peck said St. Vincent's Hospital is at Westport and is very good.

54. Per the AMR (LD93P1) PATIENT CARE REPORT dated June 29, 2020 Case # 14950534 which shows that (1) Agency: Fairfield PD, (2) St. Vincent's Hospital authorized the AMR order on 06/29 at3:30 AM and printed the order on 06/29/2020 at 04:30:18. The order

was to involuntarily commit me to St. Vincent's hospital. (3) Caller: 911. (4) Call Received: 5:14:42. (5) Fairfield Police Department issued an order at 05:20 for the case as psychiatric hold status, and involuntary, with paperwork attached. Although in fact there was no paperwork attachedIt was a false involuntary commitment. To cover their illegal activities, AMR and police made false reports.

55. At 5:29 while riding the ambulance, defendant Richard Peck created a false emergency report, however he didn't sign on the AMR report in the Other Caregivers section which listed Fairfield PD. The certificate didn't show an examination date/time. Also the Admission Date, Admission Time, and Examined By information were all blank. It was also a false certificate.

56. In addition, based on DMHAS information police must request form MHCC-1 from DMHAS. However when we called DMHAS 1-860-418-7000, we were informed that the hospital provided Form MHCC-1 to the police. This means defendant Richard Peck didn't receive form MHCC-1 via legal channel. In addition, defendant Peck made false statements that I was hallucinating that I saw spirits or dragons etc. in the house. He also made up that I thought someone was bugging my house and hacking my cell phone, which I never said.

57. At 5:34 while riding the ambulance, defendant Mackenzie D'Iorio (EMT of AMR) created false records that he took my vital signs. This never happened. They created false statements on the patient care report that Patient / Family requested and made the destination decision. This was a lie because I refused to go to any hospital with them. While in the ambulance I was deprived of my right of receiving the report and knowing my right. In the ambulance, I told them that I would find a lawyer, I didn't want to go to St. Vincent, I did not agree to sign, and I would not pay for the ambulance. But defendant Richard Peck expressed contempt. AMR Patient Care Report page 7 of 9 shows defendant Mackenzie D'Iorio, EMT of AMR signed in the "Facility Signature" section, treating me as incapable of signing (Behavior/Psych). This action deprived me and my family of our rights under C.F.R. 424.36(b)(1)-(3).

58. Defendants Richard Peck and Mackenzie D'Iorio escorted me to St. Vincent's Hospital. AMR report shows another AMR crew Justin Rondeau, Paramedic; however, this person was not present.

59. At 5:49 the ambulance arrived at St. Vincent's Hospital located at 2800 Main Street in Bridgeport. Defendant Rachel Bouteiller RN signed as the Receiving Facility Representative.

60. At 5:50 defendant Fayola Carmichael RN made a wrong registration. Defendant Bonnie Perez printed the registration and provided it to AMR. This approves the conspiracy between St. Vincent's Hospital and American Medical Response.

61. At St. Vincent's Hospital in Bridgeport, I told them that I would find a lawyer and I don't have psychosis. However, I was forced to sign a document agreeing to pay the full cost as an inpatient without any explanation. Later I was informed the hospital made false claims to the insurance company using this document. Same as in 2016, AMR and the police kidnapped me to St. Vincent's Hospital. They abused the process, this was an unlawful involuntary commitment.

62. Per SVMC 2020 page 10, at 5:51 I was illegally admitted as inpatient for evaluation. Defendant Christopher Orelup MD was assigned to be the ED provider. I was put in Room/Bed B17/A. It was a gas chamber-like cabin with only one stretcher. They secluded me in this room and didn't allow me to leave. I was ordered to change into paper scrubs and undergo a urine test. I arrived at Bridgeport at five o'clock in the morning.

63. In the morning at 7:29 am I asked for breakfast. After a while, defendant nurse Barbara Mcconachie brought the table with food to me. I told her, there was a urine cup with urine in it on the food table. She did not answer me. I reported this to another medical staff, that the nurse brought urine to me. The other medical staff remained silent and didn't intervene. I told defendant Christopher Micahel Orelup MD that the food tray brought to me had a urine cup on it. The defendant Christopher Micahel Orelup MD said,``You do not want food with urine." I said, 'no, please change to another clean food." The defendant Christopher Micahel Orelup MD in a ridiculous way said to defendant nurse Barbara Mcconachie ," She does not like urine." Defendant Nurse Barbara Mcconachie took the food with the urine cup away, but she never took food back again. I asked again and again for food to the nurse and the defendant Christopher Micahel Orelup MD, but nobody answered me. Then they began taking food by themselves, and showed they were taking yummy food, trying to make me feel even more hungry.The defendants had violated 42 C.F.R. section 482.13(c)(3) (The patient has the right to be free from all forms of abuses or harassment)

64. Based on SVMC 2020 page 10, the following defendants conducted abuse:

| Provider | Role | Assigned | Unassigned |
|---|---|---|---|
| Christopher Morelup MD | ED Provider | 6/29/2020 05:51.20 | |
| Rachel Bouteiller RN | ED Nurse | 6/29/2020 05:53.45 | 6/29/2020 09:37:42 |
| Barbara Mcconachie | ED Nurse | 6/29/2020 07:12:14 | |
| James Week | ED Unit Sec/Tech | 6/29/2020 07:36:57 | |
| Porcha Robertson | ED Unite Sec/Tech | 6/29/2020 07:46:42 | |
| Alexandra Marini RN | ED Nurse | 6/29/2020 09:37:43 | |

65. Per SVMC 2020 page 15, defendant Christopher Orelup MD created false statements in the history of present illness section. His statements mentioned ridiculous things such as dragons and spirits etc. The report included false diagnosis such as "Acute Psychosis, Delusional disorder; Hypokalemia".

66. Per SVMC 2020 page 16, defendant Christopher Orelup MD made illegal inpatient orders without consent. Based on CGS 17a-503, those brought in by the police should not be treated as inpatients.

67. Per SVMC 2020 page 20, defendant Christopher Orelup MD made false diagnoses such as "Acute psychosis; Delusional disorder; Hypokalemia; acute psychosis" without consent. The defendant is not a psychiatrist, he has no qualification to evaluate psychiatric related issues.

68. Defendant Christopher Orelup MD made a false medical record that I had hypokalemia.

69. SVMC 2020 page 399 shows my potassium level was 3.2L at 6:04 EDT on 6/29. SVMC record shows his medical order for blood test was 6:04 EDT. Actually I was never given a blood test in the emergency department. This is a proof for SVMC fabricating medical records.

70. Per SVMC 2020 page 21, medications given in the last 24 hours excluding anesthesia medications were "potassium chloride 20 mEq oral tablet, extended release" on 6/29 at 07:29 EDT. However, I didn't receive this medicine. I received nothing except some water this morning. So they would have put the potassium chloride in the water I drank. SVMC 2020 page 398 shows my potassium level was as high as 7.1cf1 on July 3rd. SVMC page 67 as noted by Colleen Hamill RN also shows my potassium level was high. SVMC page 64 shows my potassium level was high by Rizwan Iqbal MD on July 4th. SVMC page 67 shows my potassium level was high by Chidinma Gubor on July 4th. This was based on a

blood test. This must have happened because of the potassium chloride I was given on 6/29. It is especially harmful when potassium is taken with an empty stomach. Defendant Christopher Orelup MD intentionally gave me potassium when I had an empty stomach at 7:29 EDT on 6/29. He was maliciously hurting me on purpose. The defendants might have given me again potassium chloride with water in the emergency department and in BHU and WPC on 6/30, 7/1, 7/2 and on 7/3 without my consent.

71. Defendant Christopher Orelup fabricated a COVID-19 related medical records together with defendant Liu Jingchun of SVMC and defendant Lei Li of The Jackson Laboratory (SVMC 2020 page 329, 407). However I never took any nasal swabs for COVID-19 test when I was in St. Vincent's Hospital. During the COVID-19 pandemic, I was kidnapped to SVMC and put under great danger. Defendant SVMC fabricated COVID-19 test reports and violated federal and state pandemic related laws.

72. Per Emergency Discharge document on SVMC 2020 page 23, I "have been given the following list of patient education materials, prescriptions, and follow up instructions and have verbalized understanding ..." However I was in the emergency room this time at 13:28 on 6/29/2020 and I didn't receive any of the documents listed, the medical record didn't have my signature and provider signature.

73. At 11:57AM, I was transferred to BHU (SVMC 2020 page 14) by defendant Jermesha Wright RN, room BHU 102-A.

**Detailed Review of Medical Records associated with time in BHU**

| Date / Time | Record | Defen dant | Content | Details | Comments |
|---|---|---|---|---|---|
| 6/29/20 20 11:57 | SVMC 2020 P14 | Jermes ha Wright RN | Emergenc y Document ation | Pt escorted to BHU with security and ER tech. Pt was changed into paper scrubs prior to BHU arrival. Security wanded pt and clothing articles were searched. Blood work, Covid test and urine obtained in ED to initiate medical clearance. Pt welcomed to unit and BHU process explained. | I didn't receive any blood work and Covid test.<br><br>I was asked for urine test, however they brought back the urine cup together with my food tray. I didn't know whether they did the urine test. |
| 6/29/20 20 | SVMC 2020 | Simon A | Order: Admit to | Order Details: 6/29/20 12:35:00 PM EDT, Not Specified, Behavioral | |

| | | | | | |
|---|---|---|---|---|---|
| 12:35 | P300 | Ovanes sian MD | Inpatient. | Health, Ovanessian MD, Simon A, Surapaneni MD, Bujji, 2 or More Midnights, I certify that hospital inpatient services are reasonable and necessary, and appropriately provided as inpatient services in accordance with the 2-midnight benchmark under 42 CFR 412.3(e), 6/29/20 12:35:00 EDT. | |
| 6/29/20 20 12:35 | SVMC 2020 P429-430 | Simon A Ovanes sian MD | Inpatient Stay Certificati on | Initial Certification Statement: I certify that this inpatient psychiatric facility admission is medically necessary for treatment which could reasonably be expected to improve the patient's condition or for diagnostic study. | |
| 6/29/20 20 12:36 | SVMC 2020 P330 | Simon Ovanes sian MD | Order: General diet | Electronically signed, Lori Dube RN on 6/29/2020 14:41 EDT. | At this time I was still in Bridgeport ER. Lori Dube is a nurse in WPC. |
| 6/29/20 20 12:36 | SVMC 2020 P14 | | Emergenc y Document ation | Inpt Bed request for WPC Complete | |
| 6/29/20 20 12:37 | SVMC 2020 P355 | Simon Ovanes sian MD | | Order details: 6/29 12:37:00 PM EDT moderate suicidal risk | Intentionally brings up suicidal risk for false imprisoning me even though I had none. |
| 6/29/20 20 12:38 | SVMC 2020 P29 | Simon A Ovanes sian MD | Consultati on notes | Defendant made false statements in the Chief Complaint and History of Present Illness section, such as "EMS called for domestic altercation with husband. Husband states that she has been seeing spirits and dragons around the house. She bit her husband and broke a window tonight. Pt on PEER" Also "Delusional with visual delusion. Did briefly mention seeing snakes in her yard". | However neither myself nor my husband had ever spoken with this doctor. He wrote these false statements on purpose trying to cover his conspiracy with the police to illegally imprison me.<br><br>The fact was that I called 911 and requested a security check for my home. Then the police, AMR, and St. Vincent's Hospital used this opportunity to illegally involuntarily commit me.<br><br>I have a good marriage and family. There was never any domestic violence. The only violence I ever experienced was by police and by AMR and St. Vincent's Hospital. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | He intentionally diagnosed me as paranoid, delusional using false facts made up by himself. |
| 6/29/20 20 12:48 | AMR 2020-6-2 9 noon 1/10 | Zachar y Schuler EMT | ED called AMR per doctor's orders, as soon as possible | | This is an evidence that Dr. made decision to false imprison me in the WPC |
| 6/29/20 20 13:00 | AMR 2020-6-2 9 noon 5/10 | Fayola Carmic hael RN | Encounter informatio n | Admit physician:Simon A Ovanessian MD<br>Attend Physician:Surapaneni MD, Bujji | |
| 6/29/20 20 13:02 | SVMC 2020 Page 30 | Simon A Ovanes sian MD | Assessme nt / Plan | Diagnosis;<br>delusional disorder<br>Acute psychosis<br>Hypokalemia<br>Psychiatric screening exam<br>Medically cleared and patient will be admitted for safety and further management of her delusional symptom | Maliciously made false psychiatric diagnosis and treatment, to falsely imprison me who just got pregnant from my safe home to this dangerous place and be physically, mentally, medically and sexually abused, |
| 6/29/20 20 13:03 | AMR 2020-6-2 9 noon 5/10 | Jermes ha Wright RN | Printed the document to AMR | | SVMC and AMR colluded and conspired, they violated my privacy. |
| 6/29/20 20 13:20 | AMR 2020-6-2 9 noon 1/10 | Zachar y Schuler EMT | At PT side | | |
| 6/29/20 20 13:27 | SVMC 2020 P14, P164 | Jermes ha Wright RN | Emergenc y Document ation | Psych evaluation remains in progress. Seen and evaluated by Dr and the evaluation team for admission to WPC. Pt signed involuntary. Family aware. Report given to Nurse Lori at WPC. AMR contacted. VSS documented. Report and pt chart given to AMR staff. Pt left via stretcher with AMR staff and remained calm and cooperative upon leaving the BHU. Belongings were returned. | Before I got onto the ambulance, the defendant Jermesha Wright RN forced me to sign a WPC voluntary commitment document without any explanation, intentionally making the case that I voluntarily went, to cover their illegal action to falsely imprison me in WPC.<br><br>She intentionally hand-wrote the time as 12:31, to be before the doctor ordered admitting me at 12:35. She falsified this document. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | She also signed as the witness, knowingly making a false statement. (SVMC 2020 P164) |
| 6/29/2020 13:27 | AMR 2020 P1/10,9/10 | Zachary Schuler EMT | transport | Does not have my signature. Zachary Schuler EMT signed in the "Facility Signature" section to certify that I "was physically or mentally incapable of signing", under 42 C.F.R. 424.36(b)(1)-(3). | This means I was kidnapped and unlawfully committed. And my family were not aware<br><br>The defendants violated my constitutional rights.<br><br>AMR made illegal fraudulent claims to my insurance company. |
| 6/29/2020 13:28 | SVMC 2020 P14 | | Emergency Documentation | Inpatient Bed Request, Assigned, Ready, Complete WPC | |
| 6/29/2020 13:28 | P14 | | Emergency Documentation | Reg for surg/endo Complete WPC | They willfully and maliciously intended to perform involuntary psychiatric surgery on me to hurt me. |
| 6/29/2020 13:28 | SVMC 2020 P20-23 | Orelup Christopher,MD | Discharge document | did not have my signature<br>And did not have provider signature | This was a false discharge document. The defendants just want to illegally imprison me at SVMC Westport via the SVMC emergency department Bridgeport. |
| 6/29/2020 13:40 | SVMC 2020 P430-434 | Andrea E Bertolozzi | Behavioral Health Forms | Made false record,<br><br>P434: As per Dr. Ovanessian pt to be admitted to WPC. Dx: Unspecified Schizophrenia spectrum d/o and other psychotic d/o Suicide risk moderate. Psych admit, voluntary | After I came to the BHU, this defendant came in. I told her 6/28 was the third anniversary of my father's death which has religious significance for me. I am a budhist, am confusionist, and I am pregnant.<br><br>I emphatically emphasized my Chinese teaching experience in Harvard University, my intact family of a husband and two daughters. I called 911 and requested a security check for my home, but police kidnapped me here.<br><br>However she maliciously falsified records, defamed my family as a domestic violence case. She maliciously filed a DCF-136 form |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | making it appear to be a problem from my own family. She maliciously stated that my husband and children were supportive. However none of my family members had ever spoken with this defendant. |
| 6/29/2020 13:48 | AMR 2020 P1/10, 9/10,6/10 | Zachary Schuler EMT | | Arrive at WPC. defendant Lori Dube RN of WPC signed as the receiving facility representative of Hallbrook Hospital (WPC's other name) | This shows WPC, SVMC emergency room and AMR colluded and conspired to kidnap me. Police emergency certificate was included in this record again on page 6/10. This shows the purpose of the police kidnapping me this morning was to imprison me at WPC. |
| 6/29/2020 13:54 | | Zachary Schuler EMT | | Care trans'd | |
| 6/29/2020 14:00 | SVMC 2020 P166-169 | | SVMC Westport Campus Admission agreement | My signature was absent. The document shows "Pt refuses to sign". | This means I did not come voluntarily. Instead I was deceived and kidnapped into SVMC for illegal imprisonment. |

74. After I arrived at WPC on 6/29, I was put to room 184. I was allowed to make phone calls so I called my husband, told him that I was kidnapped here and I wanted to see him, I wanted him to find a lawyer for me. He said he called the hospital but wasn't able to locate the person in charge, and without an appointment he wasn't able to come to see me. To confirm my safety, he and my daughter came to WPC and walked around the building to find room 184 window. We saw each other through the window. Then they were met by WPC security and let out. This is strong proof that St. Vincent's Hospital illegally imprisoned me without my family and husband's permit and support.

75. Defendant Bujji Surapaneni was the main attending physician during the time when I was illegally detained in WPC. On June 29 14:23, he maliciously issued a Unit Restriction Order (SVMC 2020 P351). At the same time, he ordered prescription psychiatric drugs per SVMC 2020 P373-381 without informed consent such as diphenhydrAMINE (Benadryl), haloperidol (Haidol), LORazepam (Ativan), and risperiDONE (RisperDAL on p385. I was forced to take these psychiatric medicines or by rejection without my informed consent on June 30, July 5 and July 8 against my own wish. These psychiatric

medicines caused severe harm to my body, especially during the time period that I was pregnant. The infant to be born under the impact of these medicines would have mental disability upon their birth.

76. On June 30, when my husband was visiting me at 6:30 and brought me my own clothing, WPC didn't allow him to pass the clothing to me directly. They used the excuse for a security check. When my husband left, I brought with me a cup of water and sat in the canteen. Defendant Cynthia Campbell RN brought me with my clothing that had some highlighter fluorescence marks. I was frightened so I poured my cup of water to wash it. Defendant Cynthia Campbell RN and several staff including defendant Kelechi Ogbonna MD and defendant James Richards RN rushed to the canteen, threatened me, trying to force me to go back to my room. I put tables in front of me. They assaulted me and grabbed me back to my room. Per SVMC 2020 P340 defendant Kelechi Ogbonna MD made a Restraint Frequent Monitoring order at 19:14 that restricted me from leaving my room, and he personally acted together with defendants James Richards RN and Cynthia Campbell RN and several others. His excuse was that I attacked another patient. This was libel. Later defendant Bujji Surapaneni and other defendants used the same excuse when they filed the petition to Probate Court.

77. When I got back to my room, defendant Cynthia Campbell RN forced me to take medicine. I told her that I was pregnant so I can't take psychiatric medicines. She yelled no you are not pregnant. I went to the bathroom and threw up the medicine from my throat. Then defendants Kelechi Ogbonna MD, Cynthia Campbell RN, and James Richards RN and several others forced me to my bed, pulled off my pants, and injected a shot to me. Per SVMC 2020 P74, defendant Kelechi Ognonna MD at 7:45 wrote in the medical record: PLan IM medications x 1, required physical hold to receive IM medications. Per SVMC 2020 P74, defendant Cynthia Campbell RN at 8:19pm wrote in the medical record: patient received IM Haldol 5 MG Ativan 2 MG and Benadryl 50 MG in right gluteus. (SVMC 2020 P524, P525 medication administration record P526 infusion and injection billing report)

78. When I was lying in bed I heard defendant Cynthia Campbell RN and others were standing outside my room. They talked about how they were going to make a lot of money by putting me in the hospital. Defendants Kelechi Ogbonna MD or James Richards RN came into my room, touched me. I lost my consciousness. I demand an investigation by reviewing the video and any other records to make sure whether I was sexually assaulted during this time. The defendants had violated 42 C.F.R. section

482.13(c)(3) (The patient has the right to be free from all forms of abuses or harassment)

79. Per SVMC 2020 P74, defendant Cynthia Anderson wrote in the record that they abused me because I "denies any issues except that the police and school are taking away my rights to take care of my daughter. She expressed that people took her money and touched her". This is evidence of the connection between the 2016 case and the 2020 case. What was said were all facts. There were conspiracies by the Fairfield police department, Tomlinson middle school, and St. Vincent's Hospital. They violated U.S. code 241 Conspiracy Against Rights.

80. On July 5, my husband visited me and brought me an English-Chinese dictionary. Together we read patient right leaflets and materials. The materials clearly showed that it is illegal to force medication without informed consents. The materials also introduced the difference between voluntary commitment and involuntary commitment. When my husband left I continued reading the materials. I argued with the staff in the office, especially with defendant Cynthia Campbell that her actions of forcing medication to me were illegal.

81. When I returned to my room, several nurses came into my room, again forcing me to take medicines. I told them it was illegal to force medication. Defendant Roger Jou came in. I told him that it was illegal to force medication, I said you are a doctor and you should know. He said nothing. Other people continued to force me to take medicine. They asked me whether to receive a shot or to take the medicine. In order to prevent my pants from being pulled down again in front of men, I took the medicine. Based on SVMC P61 and P523, defendant Christine Pannone RN was the nurse on duty, she gave me Ativan 2mg; Haldol 5 mg and Benadryl 50mg pens at 10:43pm.

82. This time my reaction to the medicines was much worse. I was dizzy. I feel an electric shock whenever I lie down. I couldn't sleep.

83. Until July 8, I couldn't sleep for a long time. I put the bed sheet on the cold floor to sleep on the floor. I couldn't fall asleep. So I asked for medicine that can help me to sleep. Defendant Cynthia Anderson gave me three kinds of medicines. I told her that I was pregnant and I can't take psychiatric medicines. I only wanted to have some sleeping pills. She said you are not pregnant. I asked her when a test would tell whether I am pregnant. She said two weeks. I told her that I just conceived on June 25 so it is not two weeks yet and a test won't be able to tell. Per SVMC 2020 P522, she still gave me these

psychiatric medicines: haloperidol (Haldol), LORazepam (Ativan), and risperiDONE (RisperDAL), and deceived me into taking these psychiatric medicines without my consent. Per SVMC 2020 P522, on July 8 at 10:34 he maliciously wrote in the medical record that "fearful, thinks housekeeping is trying to kill her, crying but wants medicine to help her".

84. On June 30, July 5 and July 8, I was forced to take medication and fell unconscious afterwards. When I woke up I noticed there were different males entering my room. I am very fearful that I have been sexually assaulted. I demand investigation of video footage. The defendants had violated 42 C.F.R. section 482.13(c)(3) (The patient has the right to be free from all forms of abuses or harassment)

85. When I questioned the defendant Bujji Surapaneni what medicines were given to me, the defendant never provided me with any information and never acknowledged that he ordered such medicines. Even during the court hearing on July 20, he presented another type of medicine to the court to mislead the probate court.

86. On 7/6, 7/13 and 7/20, inder to imprison me in the WPC, defendant Bujji Surapanini issued Inpatient Stay Recertification (SVMC 2020 P435-436).

87. Defendants Bujji Surapaneni and Audrey Harrell on July 2 and defendant Ryan Lieberman on July 7 respectively wrote to the probate court Judge Wexler false accusation letters. They wanted to involuntarily commit me in the hospital, to use medicine without consent, to appoint a conservator with authority to give informed consent for psychotropic medications even over my objection. (SVMC 2020 P28, 29, 70, 71, 125,126)

88. They made up false facts that I attacked another 18 year old patient. They diagnosed a healthy person as "gravely disabled" without basic ethics. They wrote to the judge with the intention of avoiding the due process.

89. On July 10 defendant Bujji Surapaneni filed a petition to Westport Probate Court. He told fake facts that I came to the hospital on a voluntary basis. He deprived me of my rights to a lawyer in the document.

90. The petition document had wrong statements, such as: "The respondent, a 51 year old Chinese woman, has a history of psychiatric hospitalization at St. Vincent's Hospital in which she was admitted for psychotic symptoms for four days in 2016 and discharged

without medicine. Since that time she has not suffered symptoms until this incident in June of 2020. "

91. This was not correct. I was falsely imprisoned at St. Vincent's Hospital without any psychotic symptoms in 2016 between September 26 to 30. Before that, I had a good life and a good career. I had a master degree, I taught at Harvard University, I published many essays in international conferences. I had an intact family of a husband and two daughters. I visit our family doctor every year and maintain a perfect health record.

92. As a mother, the safety, physical and mental health of my children are always the first to me. That was why in 2004 I left my teaching position at Harvard University and moved to Connecticut so my 4 year and 1 year old daughters can stay together with both mom and dad. On September 26, 2016, when my 13 year old little daughter was illegally detained and threatened by defendants Lance Newkirchen, Anthony Formato, and Morgan Rhodes, I was extremely worried about her safety, I had to see her being safe. They purposely detained my daughter and deprived me of my guardian rights. This left me with a permanent psychological trauma.

93. When I was kidnapped into SVMC by defendants Lance Newkirchen, Bret Jackson, and James P Zwally on September 26, 2016, I was treated with violence and I was illegally given injections of psychotic medicine which were medically harmful. Without a detailed review of video footage to prove otherwise, I always felt I was sexually assaulted when I was handled and transported by only male staff while being unconscious during the transportation time. This inflicted serious psychiatric trauma on me. I experience post traumatic stress disorder after being treated with such violence.

94. On September 27, I was again illegally given medically harmful psychotic medicines when SVMC illegally transferred me from Bridgeport to Westport. I was forced to the corner of the room by several male staff and I was forced to take an injection of psychotic medicine which made me unconscious. Then I was again handled by and transported by only male staff while being unconscious during the transportation time. Without a detailed review of video footage to prove otherwise, I always felt I was sexually assaulted when I was handled and transported by only male staff while being unconscious during the transportation time. This inflicted serious psychiatric trauma on me. I experience post traumatic stress disorder after being treated with such violence.

95. In 2016, defendants Clifford Schwartz MD, Sharon Hasbani, Dora Orosz and Bruny Jacques Germain MD, willfully conspired and falsely certified that I, a healthy person

without any psychotic illness, had psychiatric disabilities. The defendants also illegally prescribed psychotic medicines without my informed consent.

96. Defendant St. Vicent hospital and defendants Lance Newkirchen, Anthony Formato, Morgan Rhodes, American Medical Response Inc., Bret Jackson, and James P Zwally, conspired to use unlawful ways, defamed a healthy citizen to have psychiatric disability, paranoia delusion,, forced harmful psychiatric medication without informed consent, illegally imprisoned her, and ultimately caused her to be involuntarily committed to a mental hospital, and deprive her of her civil rights and her guardianship of her children, and to destroy her family.

97. The petition document had wrong statements: "The respondent was exhibiting symptoms of paranoia which caused her to call 911 and voluntarily admit herself to St. Vincent's Hospital. She reportedly knocked out her bedroom window to release evil spirits which she believed were lurking in her home and could harm her daughter. However, shortly after being transferred to St. Vincent's Behavioral Health in Westport, she revoked her voluntary status."

98. This is not correct, since the 2016 case, the group of defendants (St. Vincent's Hospital and employees, AMR and crew, and Fairfield Police Department and officers named above) had maliciously continued waiting for the next opportunity to persecute me. In addition, St. Vincent's Hospital and AMR had conspired and filed fraudulent medical expense claims through unlawful commiting and hospitalizing me, to achieve financial gains. Therefore on June 29, 2020 before I called 911 at 4:58AM, St. Vincent's Hospital already illegally issued AMR psychiatric involuntary commitment authorization.

99. Defendant St. Vincent's Medical Center, later referred to as "SVMC", also called St. Vincent's Hospital is located at 2800 Main St, Bridgeport, CT 06606. SVMC became part of Hartford Healthcare in October 2019. It is a fully Catholic hospital. The following SVMC facilities were involved in this allegation:

100. Defendants AMR and Fairfield Police Department are sponsored EMS agencies of St. Vincent's Hospital Emergency Department. The Fairfield Emergency Communications Center (ECC) is a centralized 911 call center located within the Fairfield Police Department's Headquarters.

101. Therefore on June 26 2020 when I called 911 to request a home safety check, defendant Richard Peck kidnapped me to St. Vincent's Hospital and illegally confined me.

St. Vincent's Hospital purposefully tried to cover the case up as if I called 911 and it was a voluntary commitment, and tried to cover it up as a domestic violence case. They illegally imprisoned me, and abused me physically, mentally, and medically. Their malicious intention was to push me into a real psychotic disabled long term inpatient, to achieve their evil purpose for Asian hate and financial gains.

102. They used fabricated evidence to diagnose me as psychiatric disability, paranoid delusion. It's kind of lynching, against civil rights law Title 18 U.S.C. section 241, as well as a hate crime and racism.

103. Defendants St. Vincent's Hospital abused the process, used fabricated evidence and filed a malicious prosecution. It is a dignitary tort. It caused me great emotional distress.

104. Defendants Raj Bansal and Amanda Sandrew made false testimonies, diagnosed a healthy person to a psychiatrically disabled person. On July 13 during my talk with the defendants, I emphatically emphasized my Chinese teaching experience in Harvard University, my intact family of a husband and two daughters. As a mother, the safety, physical and mental health of my children are always the first to me. That was why in 2004 I left my teaching position at Harvard University and moved to Connecticut so my 4 year and 1 year old daughters can stay together with both mom and dad. Now since my daughters are almost grown-ups, I will continue pursuing my goal in linguistics and in bi-lingual studies and writing books.

105. However, defendants Raj Bansal and Amanda Sandrew maliciously falsified records, defamed my family as a domestic violence case. They maliciously testified that I was "gravely disabled and suffers from a psychotic illness". They described me as delusional and paranoid.

106. Particularly defendants Raj Bansal interviewed me via the internet, as witnessed by defendant Nadine Ritt. However, defendant Raj Bansal testified with a lie in the Probate Court hearing on July 20 that she came to the hospital and visited me in person.

107. In addition, defendants Raj Bansal and Amanda Sandrew copied the languages from St. Vincent's Hospital in their testimonies. They and the St. Vincent's Hospital is a connected group with shared interests. They violated the federal 1970 Organized Crime Control Act (RICO) and the Connecticut Corrupt Organizations and Racketeering Activity Act (CORA).

108. Defendant Bujji Surapaneni also ordered additional medicines such as ibuprofen, magnesium hydroxide/aluminum hydroxide/simethicone (Maalox Advanced Maximum Strength oral suspension) and triamcinolone topical (triamcinolone 0.1% topical cream) under my name. However, I never saw those medicines.

109. Defendant Nadine Ritt was assigned to be the treatment coordinator on 6/30. She made various notes in the record. Refer to SVMC 2020 pages 59-60, 71-73, 75, 162-163, 436, 438, 440, 442, 444, 446, 448, 497, 507 and 508. She mostly copied the false statements by Andrea E Bertolozzi. She repeatedly recorded in the medical records that my stay was "voluntary". Under the law, a voluntary patient should be allowed to leave at his/her own wish at any time. However, even though I told her again and again that I wanted to go home, she only said that I wasn't allowed to leave at my own wish. My husband also asked her to let me go home. She made false records that my husband was supportive of my stay in the hospital. Defendant Nadine Ritt also made a false Authorization For Consultation With Family form as per SVMC 2020 page 163. She deliberately deceived me and my family, with the intention of detaining me illegally in WPC for a long time.

110. On July 10, defendant Nadine Ritt asked me to write and sign a "3 Day Notice and Rescinding Form". The purpose of her doing so was not to let me go home. On July 7 SVMC had filed a petition to the Westport Probation Court with the purpose to treat me as involuntary commitment and to put me under forced medication and under conservatorship. To cover their illegal actions of abusing the process and unlawfully involuntary committing of me, SVMC asked me to sign this form. Their action was to falsify a voluntary commitment document.

111. Defendant Nadine Ritt lied to me that St. Vincent's Hospital found me a lawyer to help me go home, to cover the fact that SVMC filed a petition against me in the Probate Court, they deprived me of my right to a lawyer by maliciously stating in the court filing document that I wasn't able to request and obtain a lawyer. It was the court who assigned an attorney to me. Defendant Nadine Ritt had tried to create hurdles for me to meet my lawyer. PC-801.

112. Per SVMC 2020 P60, defendant Nadine Ritt wrote at 3:28pm 7/7/2020: "Filing court papers for medication over objections,involuntary stay and appointment of conservator. "It is strong evidence that she knew about SVMC's conspiracy to unlawfully imprisoned me, to abuse me to disability and violate my civil rights.

113. SVMC requested witnesses to testify in the court. Defendant Raj K. Bansal didn't come and visit me, instead she talked to me over the internet, with defendant Nadine Ritt sitting next to me. However, defendant Nadine Ritt avoided appearing in the court on the hearing day July 20.

114. In the Westport Probate Court hearing on July 20, 2020, the court turned down SVMC's three petitions. The court finds that (1) I was not gravely disabled and should not be involuntarily committed (2) I should not be forced to take medicine without informed consent, and (3) I do not need to be appointed a conservator. This proves that in 2016 and 2020 I was illegally kidnapped to SVMC and was forced to take medicine. All the defendants' actions in the color of laws were illegal. All certificates provided in the color of law were illegal. All the psychiatric diagnoses were maliciously intended and wrong. My constitutional rights and civil rights were severely violated. I had great emotional distress. My health, my family and my career were all negatively impacted.

## D. CAUSE OF ACTION - 1. 2016 Case

**Claim I: illegal detaining of minor and deprive parents of guardian rights**

1. On September 26, 2016, at about 10AM I went to my daughter my 13-years old little daughter's Tomlinson Middle School to complaint about the school's discrimination against Asian Americans, and to request the curriculum for social studies and health studies. I was treated rudely by the principal Anthony Formato. I went to the town education board to report and complain about this. For revenge on me, Principal Anthony Formato and Counselor Morgan Rhodes conspired and made false statements to the Fairfield police department.

2. Police Lance Newkirchen and Counselor Morgan Rhodes illegally detained little daughter who was a minor in counselor's office at Tomlinson Middle School, threatened her with false statement such as your mom came to school to report that you were going to kill her, inducing her to make false statements for evidences such as her mom's mental issues.

3. When I came back to the school and found out my daughter was illegally detained by the police, I requested to bring my daughter home. Defendants Morgan Rhodes, Lance Newkirchen, and Kovacs prohibited Dongmei Li from entering the school and picking up my little daughter. They began to conspire to deprive me of my guardianship rights and

to commit me to a mental facility.

4. The defendants violated Connecticut General Statutes 10-233

   Rights of Minors in Connecticut, A Guide to Resources in the Law Library

   Legal Rights of Children 3d, by Thomas R. Young, 2020- 2021 edition, Thomson Reuters (also available on Westlaw).

   Chapter 17. Federal Civil and Constitutional Rights of School Children
   Section III. The right to be free from unreasonable searches and seizures
   § 17:21. In general
   § 17:22. Suspicionless searches
   § 17:23. Locker searches
   § 17:24. Seizures
   § 17:25. Searches of a student's property or person in general
   § 17:26. Situations and facts justifying searches
   § 17:27. – Person conducting search
   § 17:28. Legality of urine testing in public schools and other tests
   § 17:29. Legality of using metal detectors at entrances to public schools
   § 17:30. The intended use of evidence obtained in the search

**Claim II: false arrest (11:50am-12:47pm September 26, 2016) by defendant police officer Lance Newkirchen and AMR EMT Bret Jackson; abuse of process and unlawful psychiatric commitment (assault and wrongful detention)**

5. Support facts 1: It was a false involuntary commitment on September 26, 2016.

6. AMR report (L093P1) shows they received a call from Fairfield 911 at 11:43 am. At 11:50 the "Treatment" was recorded as "Psychiatric Hold Status - Status Involuntary. The defendants' action was in violation of Connecticut's commitment process under CGS section 17a-497 and 17a-498, (the jurisdiction of the commitment of a person with psychiatric disabilities to a hospital for psychiatric disabilities shall be vested in the Probate Court for the district in which such person resides.) which vests commitment jurisdiction in the probate courts.

7. Support facts 2: It is also a false emergency confinement by the police.

8. Police officers Lance Newkirchen and xxx Kovacs took me into custody and forced me into the ambulance. Lance Newkirchen escorted me to SVMC without a court issued warrant. He also didn't create a police emergency certificate. SVMC medical record shows that "she was also brought in by police but not in police custody" (SVMC 2016 page 19). Police report by Lance Newkirchen (CFS NO 1600038703) also stated Newkirchen "rode with AMR" to the hospital.

9. Support facts 3: This commitment was not under a valid Emergency Certification of Certain Licensed Clinical Social Workers and Advanced Practice Registered Nurses.

10. Defendant Lance Newkirchen in the name of 911 Fairfield Emergency Service, called AMR and requested Dongmei Li be involuntarily committed to St. Vincent's Hospital at 11:43 AM on September 26, 2016. At 11:50 AM AMR ambulance arrived, my status was changed to "involuntary" when I was having a peaceful discussion with social worker Stephanie A. Sirois. At this time my husband arrived. He told the police that I had no mental issues, and requested to bring me home. However Lance Newkirchen said it was too late because they already started the unlawful involuntary commitment process.

11. At 12:11 I finished talking with Stephanie A. Sirois, I saw my husband and I walked to him, hoping he could help me with my English to clear any questions. Lance Newkirchen and Xxx Kovacs came and grabbed me, pushing me using violent force to the stretcher which had been waiting there. One person choked my neck tightly (P18 has 2 bruises around the neck byNR Laurie Waldo-Hunter,RN on 9/26/2016 2:27pm). Bret Jackson injected some medicine (Midazolam HCL 5MG/ML Vial 2ML) into my body which made me unconscious for about 4-5 hours.

12. Lance Newkirchen's policy report named this case a "Type of incident - emergency medical call". AMR's medical record did not contain an APRN/LCSW Emergency Transportation Certificate.

13. According to CGS section 17a-503(c), if a social worker examines a person and thinks this person gravely disabled, or this person could be dangerous to himself or herself or others, the social worker is authorized to issue an APRN/LCSW Emergency Transportation Certificate. However, the emergency transportation certificate provided by St. Vincent's Hospital did not check the box "The person examined is gravely disabled" nor the box "The person examined is dangerous to himself or herself or others".

14. At 12:37 I was transported to St. Vincent's Hospital. However, medical records provided by St. Vincent's Hospital showed that AMR was authorized at 1:16 PM on September 26, 2016. This was illegal transportation.

**Claim III: suspected sex assault**

15. According to CGS section 17a-505,
Escort female patients to hospital. When any female with psychiatric disabilities is escorted to a state hospital for persons with psychiatric disabilities by a male guard, attendant or other employee of a correctional or reformatory institution, or by a male law enforcement officer ....... the person so escorting her shall be accompanied by an adult member of her family or at least one woman.

16. On September 26, 2016 between 12:11-12:37, I was transported from Tomlinson Middle School to St. Vincent's Hospital in Bridgeport, AMR staff Bret Jackson and James P Zwally, and police officer Lance Newkinchen, male individuals only. Per the AMR report Bret Jackson took vital signs of me at 12:11, 12:18 and 12:28. During this process I was unconscious.

17. In addition, Lance Newkirchen rode the ambulance. My husband requested to accompany me however he was rejected.

18. It is highly possible I was sexually assaulted during the transportation.

**Claim IV: false statements in police reports (forgery)**

19. The police report by investigator Lance Newkirchen and approved by LT. Edward Weihe maliciously made the following false statements.

20. The reports shows that, "As 211 was completing their evaluation, Zhong Chen (father) arrived on scene. Zhong Chen agreed to keep the daughter in school and not have her leave with Li today." My husband didn't agree to keep my daughter in school. This clearly showed my daughter was unwillingly detained at the school by Lance Newkirchen. He abused the power of the police to deliberately deprive us of our guardianship.

21. Based on the AMR report, at 11:50am when my husband arrived, when I was still speaking with 211, I was already under involuntary hold, wrongfully detained by Lance Newkinchen. He did not read Miranda rights to my husband and me. He forged evidence and conspired to send me to a mental hospital.

22. The report shows "Zhong Chen was very cooperative, clear thinking and rational when I spoke to him. He was not aware of any specific mental health issues facing his wife Li, and did not disclose much information about her behavior today. He did say, however, that she went to the FBI office in Bridgeport the other day to report some type of incident, presumably related to her growing paranoia."

23. This shows that the police fabricated the facts after my husband had clearly stated that I had no mental problems. He slandered the normal exercise of civil rights that I reported to the FBI as paranoia.

24. Zhong Chen agreed to take responsibility for the care of the daughter until his wife gets better. Note that both parents are married and live together."

25. The report falsely stated "211, school staff, police, AMR etc. spent over 40 minutes attempting to calm Li down". However, AMR report shows "upon arrival the patient was seated on a bench under watch by FPD officers and speaking to social services workers". This shows Lance Newkirchen had conducted illegal arrest and imprisonment of me, and illegally forced 211 to issue a false certificate to commit me to the hospital.

26. The report falsely stated that I "refused all assistance even after presented with the form mandating that she be evaluated at a hospital today". However, there was no such form completed as Lance Newkirchen mentioned in AMR records. St. Vincent's records included a certificate with no boxes checked therefore giving no authorization for transportation to a hospital for medical evaluation to determine whether the person examined is gravely disabled or the person examined is dangerous to himself or herself or others. He Ignorantly thought 211 would arrive with a warrant to arrest me. Without any legal authorization he wrongfully used violent force to assault me and conducted wrongful detention.

27. The report indicated that as time went on I "became more aggressive and defiant". The report falsely stated that my husband helped to escort me to the ambulance and I even tried to bite my husband. However, my husband requested to take me home although he was rejected. He did not want me to be taken away by an ambulance. This was supported by the AMR report which shows "PT was escorted by FPD to a stretcher".

28. My husband and I have known each other since 1989 and we have been married since 1992 for over 23 years around this time. The police report maliciously points to me and my family.

**Claim V: false statements in AMR medical records**

29. Bret Jackson made false statements in his AMR records to cover up his own illegal activities. "Destination Decision" was entered as "Patient / Family Request" on the AMR record. However, the AMR record didn't have my signature. Bret Jackson signed on behalf of the facility as if none of the individuals listed in 42 C.F.R. section 424.36(b)(1)-(3) was available or willing to sign the claim on behalf of the beneficiary, even though my husband was present.

**Claim VI: illegal conspiration for involuntary commitment**

30. Anthony Formato sent me a letter asking that I must provide a doctor's note that says I am not a threat to myself and others before I am permitted at Tomlinson Middle School again. He is the mastermind of the malicious conspiracy that they willfully wanted me, a person who does not have psychiatric disabilities to be committed to a hospital for psychiatric disabilities.

**Claim VII: unlawful involuntary outpatient**

31. Connecticut is one of only three states that do not authorize involuntary treatment in the community, often called "assisted outpatient treatment (AOT)" or "outpatient commitment". Our Aetna insurance records show the ambulance company AMR made its claim under "outpatient". AMR records show it was "involuntary" status. St. Vincent's Hospital records show "Admit Reason" as "psychiatric evaluation". It's an unlawful act. The police report shows that both Tomlinson Middle School principal Anthony Formato and police officer Lance Newkirchen showed their intention of forcing me to a hospital. They intentionally tort my and my family rights and intentionally inflict my and my family's emotional distress. They committed assault, battery, imprisonment, fraud, deceit, and defamation. Their illegal behavior resulted in me being detained in a mental hospital against my will during September 26 - October 1, 2016.

**Claim VIII: racial profiling**

32. I was retaliated against by the principal for complaining to the town government about being discriminated against. They deliberately misrepresented my words and said that I accused them of illegally imprisoning my daughter as I actually accused them of poisoning my daughter. They accused me of rambling. They deliberately misrepresented my words, and distorted my words that "9/11 happened in 2001 the year I came to the United States" to that "9/11 was coming". They distorted the fact that I went to the FBI

to report that I had a conspiracy to go to the FBI. Out of paranoid Asian hatred, they framed me for paranoia. They arbitrarily violated my constitutional rights as a U.S. citizen and as a resident of Connecticut. They also maliciously tried to deprive me of custody of my children, and tried to destroy the family relationship between the plaintiff and her husband.

**Claim IX: Monell Claim**

33. The plaintiff alleges that the Education Board failed to provide fundamental training to its employees in the following areas: (1) Multinational culture and customs and (2) Diversity and nondiscrimination. Anti-Asian sentiment in the town of Fairfield is shamefully rampant. On April 3rd, 2021 I attended the Stop Asian Hate rally at Fairfield town hall green. Besides many students and Fairfield town residents, Connecticut Attorney General William Tong and State Senator Tony Hwang both testified that even as government officials they both had experienced racial discriminations.

34. The town of Fairfield, through its policy, practice and custom, directly caused the constitutional violations suffered by the plaintiff. On September 26, 2019 the wrongful commitment of the plaintiff happened after the plaintiff reported my complaint to the Fairfield Board of Education. In 2016 after my discharge the plaintiff visited Fairfield town government and the police department to complain. The town government and police department deliberately ignored them and did not take any remedial actions. Their inaction caused my rights to be severely violated again in 2020. They intentionally violated my civil rights.

35. In addition, the following are town policies, practices and customs: (a) AAPI racism and discrimination; (b) fabricating evidence against individuals; (c) unlawful disregarding obvious proof of and claims of innocence; (d) for purpose of private provider AMR's business interest, the ECC intentionally violated resident's civil rights.

**Claim X: false imprisonment and illegal medication without informed consent**

36. I was illegally confined in SVMC and was forced to take harmful medicine. The defendants' actions violated my constitutional rights and were a dignity tort.

**D. CAUSE OF ACTION - 2. 2020 Case**

**Claim I: wrongful involuntary psychiatric commitment and false imprisonment by Fairfield Police Department, AMR, and St. Vincent's Hospital from June 29 to July 21, 2020**

37. Evidence 1: St. Vincent's Hospital medical records included a AMR (LD93P1) PATIENT CARE REPORT dated June 29, 2020 Case # 14950534 which shows that (1) Agency: Fairfield PD, (2) St. Vincent's Hospital authorized the AMR order on 06/29/2020 at3:30 AM and printed the order on 06/29/2020 at 04:30:18. The order was to involuntarily commit me to St. Vincent's hospital.

38. Fairfield Police Department, American Medical Response, and St. Vincent's Hospital, conspired to imprison me on June 29, 2020. According to Connecticut law, involuntary commitment of a person to a mental hospital must be done under a Probate Court order.

39. Police Request for Emergency Examination

40. Pursuant to CGS section 17a-503:

41. "Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section. The officer shall execute a written request for emergency examination detailing the circumstances under which the person was taken into custody, and such request shall be left with the facility. The person shall be examined within twenty-four hours and shall not be held for more than seventy-two hours unless committed under CGS section 17a-502."

42. In the event an officer finds reasonable cause to request an emergency examination, form MHCC-1 must be completed. The form is not available online and must be requested by contacting the Department of Mental Health and Addiction Services (DMHAS).

43. Police departments may request the forms by calling DMHAS at (860) 418-7000 and requesting the "Police Request for Emergency Examination" forms be mailed to the police department.

44. The next day I was transported from the hospital in Bridgeport to Westport. On both days my husband was present but he was not allowed to accompany me. Instead, I was

transported by only male medical staff and male police officer (Lance Newkirchen) on 9/26, and then on 9/27 by male medical staff only.

**Claim II: Cause of action for illegal involuntary commitment**

45. According to CGS section 17a-495b:
    involuntary patient means any patient hospitalized pursuant to an order of a judge of the Probate Court after an appropriate hearing.

46. The involuntary commitment in 2016 and 2020 were both without an order of a judge of the Probate Court after an appropriate hearing.

47. According to CGS section 171-503a,
    Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section. The officer shall execute a written request for emergency examination detailing the circumstances under which the person was taken into custody, and such request shall be left with the facility. The person shall be examined within twenty-four hours and shall not be held for more than seventy-two hours unless committed under CGS section 17a-502.

48. In the involuntary commitment in 2016, the police officer Newkirchen didn't execute a written request for an emergency examination detailing the circumstances under which the person was taken into custody. Instead, the police officer reported the case as requested by 211. However, the AMR report didn't include a 211 request form.

49. The 211 certificate had two checkboxes, one for "The person examined is gravely disabled", the other one for "The person examined is dangerous to himself or herself or others". The certificate checked neither one. This indicated that I was neither "gravely disabled" nor "dangerous to myself or others". Such an emergency certificate should not be used as a basis to confine anyone in a hospital.

50. Without an eligible certificate, the police's action of detaining me and forcing me to the hospital was illegal in violation of my human rights under federal constitution and state constitution.

51. According to CGS section 17a-504,

Any person who wilfully and maliciously causes, or attempts to cause, or who conspires with any other person to cause, any person who does not have psychiatric disabilities to be committed to any hospital for psychiatric disabilities, and any person who wilfully certifies falsely to the psychiatric disabilities of any person in any certificate provided for in CGS sections 17a-75 to 17a-83, inclusive, 17a-450 to 17a-484, inclusive, 17a-495 to 17a-528, inclusive, 17a-540 to 17a-550, inclusive, 17a-560 to 17a-576, inclusive, and 17a-615 to 17a-618, inclusive, and any person who, under the provisions of said sections relating to persons with psychiatric disabilities, wilfully reports falsely to any court or judge that any person has psychiatric disabilities, shall be guilty of a class D felony.

**Claim III: Cause of action for abuse of process; and forging false statements and certificates**

52. Based on the Connecticut AMR (LD93P1) PATIENT CARE REPORT issued on June 29, 2020 provided by St. Vincent's Hospital (copy enclosed):

Involuntary Patient
Agency: Fairfield Department
Caller: 911
Auth (Verified) 06/29/2020 3:30AM AMR -> Saint Vincent's Hospital
Printed 6/29/2020 04:30:18

53. The victim called 911 around 4:57AM on 06/29/2020, and requested the police to check her house to ensure security. Police officer Richard Peck and another policeman used this chance to enter the victim's house. One police officer kept the victim's husband separate, Peck asked the husband to send the victim to St. Vincent's hospital. At 5:20 AM, Peck kidnapped the victim to the ambulance waiting at the entrance and driven by Diorio, Mackenzie, AMR. Peck escorted the victim to St. Vincent's Hospital in Bridgeport. Being aware of the law that it's illegal to commit any person into a mental facility without a court order, the AMR staff created a false report to cover up their wrong doings. The AMR report has multiple false information such as:

PPE GLOVES SURGICAL MASK AND EYE PROTECTION......
False, the medical staff on the ambulance did not have any PPE on.

WAS TRANSFERRED TO THE STRETCHER......
Falst, the plaintiff sat in the ambulance, police officer Peck also sat in.

Destination Discussion: Patient family request
False, the victim was forced to be in the ambulance and taken away.

Physical finds: this section shows totally wrong information. For example, weight: 81.6KG, 180 LBS. The victim was about 120 LBS.

54. Third page of this report shows blood pressure, pulse etc. However, the victim only sat in the ambulance with police officer Peck present. No AMR staff performed any checks.

55. Narrative section showed language provided by police officer Peck which none was true. Such language was: "Patient believes there is monsters, spirits and dragons in her house". Victim denies having said those to the police.

56. Physical assessment section showed 7 lines. However, none of these items were performed.

57. Treatment section shows vital signs done at 5:34 AM. This is false.

58. At 5:42 AM AMR brought the victim to St. Vincent's Hospital. The AMR report showed no signature by the patient requesting or authorizing its services. The plaintiff refuses any obligation associated with AMR.

59. With the intention of committing the victim to St. Vincent's mental facility in Westport for long term commitment, Peck told both the victim and her husband that he will bring the victim to St. Vincent's mental facility in Westport. He made false statements in the Police Emergency Examination Request (FIN 90992805 on June 29, 2020). This request form was used by AMR when they brought the victim from her home to St. Vincent's emergency department in Bridgeport. This report was also used by St. Vincent's hospital when they transferred the victim to their mental facility in Westport for long term commitment purposes.

60. Police Emergency Examination Request (FIN 90992805 on June 29, 2020)

61. This request form had multiple false items:

- Orientation: Disoriented
  The plaintiff was oriented.
- Appearance Disheveled
  The plaintiff was dressed casual and normal, not disheveled.

- Attitude: Uncooperative, Suspicious, Guarded, Combative
  The plaintiff was not in such a situation.
- Speech: Pressured, Rambling
  The plaintiff was not in such a situation.
- Thought Process: Inability to Focus, Paranoid, Delusions, Obsessions, Racing Thoughts, Hallucinations
  The plaintiff was not in such a situation.
- Mood: Mood Swings, Anxious.
  The plaintiff was not in such status.
- Bit spouse
  This was not true.
- Has this person been notified of examination
  This was not specified.
- Additional information: subject is hallucinating that there is someone in the house, and bit husband in an attempt to get away from spirit.
  This was a false statement.

62. Police report by Police Officer Richard Peck (date of report 06/29/2020)

63. The report shows Type of incident as Mental patient
    This was not correct.

64. I called the police to seek help to check and ensure our home is safe. I take care of the home and know our home well. In December 2019 I called 911 for a fire alarm. In that case Ambulance also came. After the medical staff gave a brief check, I didn't need to use Ambulance. So the ambulance simply left.

65. Per the police report, ECC reported an assistance call, and reported there were monsters in the residence. This is a false statement, I never reported there were monsters in my residence. I request to review the recording of the phone call.

66. However, when policeman Peck arrived, his behavior appeared to be race and language discriminative. He only talked to me a few words. The report indicated that I was seeing spirits in the house. I never said such things. The report indicated that I stated someone was bugging the house and hacking my cell phone. These were total false statements. I never said such things.

67. Around this time my husband came out. The police separated my husband and myself like prisoners, not giving a chance for my husband to interpret for me. The report indicated my husband said I had mental history. This was a totally false statement. My husband didn't say such things.

68. Based on the AMR report, this report was timed 3:30 AM on top of page 1 and printed 4:30Am at the bottom on page 1. However, the police reported that the incident happened at 4:57. These are strong proof that AMR staff (James P Zwally, and Bret Jackson) and policeman (Richard Peck) conspired to commit me involuntarily as a psychiatric patient to the hospital. These were criminal actions.

69. Peck provided a police emergency examination request form (PEER) to commit me, the request was full of false statements. Please see a separate file attached.

70. Again in this involuntary commitment situation, the police and AMR staff forced me to the ambulance. I told them that I was not sick; I didn't need an ambulance; I didn't want to go to St. Vincent's hospital because previously my cash was stolen there. Instead, I needed a lawyer. However, they kidnapped me into the hospital. At that time, I was performing a memorial service for my father. I was on my fourth day getting pregnant. However, because of the police's wrong doing I had a miscarriage.

71. Under the law, in emergency commitment cases the police should leave a written form with the facility. However, after the commitment Lance Newkirchen contacted my husband on the following day and made endangering statements in his report. This shows the involvement in the conspiracy to involuntarily commit me.

72. As police officers being supported by taxpayer funds the police officers are to protect the citizens. However, the actions by Lance Newkirchen and Richard Peck were damaging to our life. We request a full investigation of the case.

73. Regarding the remaining section of the police report, Victim's husband states as following:

74. "Zhong stated that Dongmei has suffered from severe mental illness for some time and refuses to get help."
I didn't say this.

75. "Zhong stated that over the past few days Dongmei's psychiatric condition appeared to be deteriorating."
I didn't say this.

76. "Tonight Dongmei was having trouble sleeping."
I would have not said this because both Dongmei and myself regularly sleep quite late. We both sleep late but we don't have sleeping problems.

77. "He stated that Dongmei broke a front window with a rock."
This is not true. I didn't realize a window was broken. It was when talking with the police we realized a window was broken.

78. "...threw noodles into the back yard"
I don't recall telling this to the police or finding this out with the police. I thought I might have found out this afterwards when I walked to the other side of the house later that day.

79. "Zhong stated that during one of her outbursts she bit him on his lower left chest."
Dongmei did not bite. We've been married since 1992 and there was never a fight.

80. "Zhong stated that it seemed as if Dongmei was mixing cultural beliefs with paranoia that he could not manage on his own."
I didn't say this.

81. "He requested that if possible Dongmei be forced to talk with a mental health professional."
I didn't say this. I would not force my wife into a mental facility.

82. Victim's husband statements regarding police report by Police Officer Lance Newkirchen (date of report 06/30/2020)

83. "I spoke with husband Zhong Chen about his wife Dongmei and her "psychotic" event from the other day where she was hallucinating about monsters and becoming very aggressive."
Around noon time on June 30 I received a call from a Fairfield PD officer who was not present when the other two police officers came.

84. "Chen said that Dongmei has been suffering from an undiagnosed mental health condition that involves hallucinations, delusions, aggressive behavior and other symptoms."
I didn't say this. Dongmei was never aggressive.

85. "Dongmei refuses to be seen by a doctor and completely refuses any medical attention-she does not believe there are any issues. As a result, she does not see any psychiatrist, does not take any medication, and does not get any therapy. This has been a huge and frustrating issue for Chen."
I didn't say this. Our life was always normal both physically and mentally. I have worked from home since late March.

86. "Chen said that his wife has not had any suicidal thoughts but has had assaultive ones and homicidal ideations in the past."
I didn't say this. Dongmei never assaulted anyone and never had any homicidal ideations in the past.

87. "Call history: Arguments with tenants"

We had to evict tenants who stopped paying rent but I don't recall any arguments, especially that involving the police. We'd like to know whether there was a police report for this.

88. "CAD Alerts: "Dongmei Lei-Hallucinations and delusions. Will fight with police and can be aggressive".
This statement is outrageous. My wife had always been a peaceful person, she never had violent behaviors. We respect the police, but these statements are discriminative and wrong. It caused great pressure on our life.

**Claim IV: Cause of action for Monell Claim**

89. The plaintiff alleges that the Fairfield Police Department failed to provide fundamental training to its officers in the following areas:

90. (1) Multinational culture and customs and (2) Diversity and nondiscrimination

91. Now is a time when anti-Asian sentiment in the U.S. is shamefully rampant. On April 3rd, 2021 I attended the Stop asian hate rally at Fairfield town hall green. Besides many students, Connecticut Attorney General William Tong and State Senator Tony Hwang both testified that even as government officials they both had experienced racial discriminations.

92. In September 2016 when I visited Fairfield Townhall to complain about my experience being illegally hospitalized under involuntary commitment, I felt strongly discriminated against and disregarded. Town of Fairfield failed to provide equitable protection to its citizens.

93. After my June 2020 case of again being illegally hospitalized under involuntary commitment, whenever I brought my case to government agencies I felt strongly discriminated against and disregarded.

94. Under HB 6004 which passed the house and senate in July 2020, "no police officer, acting alone or in conspiracy with another, shall deprive any person or class of persons" of their rights enshrined in the Connecticut Constitution's Declaration of Rights, the state's equivalent of the U.S. Bill of Rights. Anyone who has had their rights violated by a police officer can then sue them for damages in civil court.

**Claim VI: Cause of action for violations of section 1, 7 and 9 of the Connecticut state constitution (wrongful arrest)**

95. The plaintiff repeats all allegations contained in above claims I-IV. The defendants, and each of them, and those in their employ and their direction, initiated and conducted illegal detaining and further involuntary commitment of the plaintiff. The defendants' actions caused great mental burden and pain to the plaintiff and her family.

Claim VI: Cause of action for violations of Amendments to the UNITED STATE CONSTITUTION

96. The plaintiff repeats all allegations contained in above claims I-IV. The defendants, and each of them, and those in their employ and their direction, initiated and conducted illegal detaining and further involuntary commitment of the plaintiff. The defendants' actions caused great mental burden and pain to the plaintiff and her family.

97. AMENDMENT IV
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

98. AMENDMENT V
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

99. AMENDMENT VI
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

100. AMENDMENT XIV

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## E. REQUEST FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by the court;
b. Federal law punitive damages in an amount to be determined by the court;
c. State law punitive damages in an amount to be determined by the court;
d. Costs and reasonable attorney's fees;
e. Such other and further relief as this Court deems just and proper.

## F. JURY DEMAND

**Do you wish to have a jury trial? Yes No** (Yes circled)

______________________
**Original signature of attorney (if any)**

______________________
**Printed Name**

______________________
**( )**
**Attorney's full address and telephone**

______________________
**Email address if available**

[signature]
**Plaintiff's Original Signature**

Dongmei Li
**Printed Name**

4539 Black Rock Tpke, Fairfield CT 06824
**( )** 203 993 0701
**Plaintiff's full address and telephone**

li_dongmei2004@yahoo.com
**Email address if available**

**DECLARATION UNDER PENALTY OF PERJURY**

**The undersigned declares under penalty of perjury that he/she is the plaintiff in the**

**above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.**

**Executed at** Bridgeport **on** 7/30/2021.
**(location)** **(date)**

李参梅

**Plaintiff's Original Signature**