## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

DONGMEI LI,
    *Plaintiff,*

    v.

STATE OF CONNECTICUT et al.,
    *Defendants.*

No. 3:22-cv-00996 (VAB)

---

### RULING AND ORDER ON MOTIONS TO DISMISS

Dongmei Li has sued fifty-five defendants, alleging, *inter alia*, unlawful seizure, excessive force, abuse of process, civil conspiracy, and racial profiling and discrimination under 42 U.S.C. § 1983, as well as state law claims of civil battery, intentional infliction of emotional distress, false imprisonment, and false arrest, arising from two alleged incidents at Ms. Li's daughter's middle school and Ms. Li's residence in 2016 and 2020, respectively. Compl., ECF No. 1 (July 21, 2021) ("Compl.").

In an Amended Complaint, Ms. Li brings suit against the following: the State of Connecticut, the State Department of Public Health, the State Department of Mental Health and Addiction Services, former State Department of Mental Health and Addiction Services Commissioner Miriam E. Delphin-Rittmon, Chief State's Attorney Richard Colangelo, and Fairfield State's Attorney Joseph T. Corradino ("State Defendants"); the Town of Fairfield, the Town of Fairfield Board of Education, Anthony Formato, Morgan Rhodes, the Fairfield Police Department, Chris Lyddy, Lance Newkirchen, Edward Kovac, Richard Peck, and the Fairfield Emergency Communications Center ("Town Defendants"); St. Vincent's Medical Center ("SVMC"); Rachel Bouteiller, Fayoia Carmichael, Margaret Chuckta, Lori Dube, Jingchun Liu, Bonnie Perez, Nadine Ritt, Jernesha Wright, Dr. Audrey Harrell, Dr. Ryan Liberman, Dr. Bujji

1

B. Surapaneni, Dr. Christopher M. Orelup, Dr. Simon A. Ovanessian, Dr. Kelechi Ogbonna, Dr. Roger Jou, Cynthia Anderson, Andrew E. Bertolozzi, Cynthia Campbell, Barbara McConachie, Christina Pannone, and James Richards ("SVMC Defendants I"); and Kellie Clomiro, Patricia Galich, Bruny Jacques Germain, Rahul Gupta, Sharon Hasbani, Lilliana Hernandez, Dora Orosz, Melissa Ortiz, and Clifford Schwartz ("SVMC Defendants II"); American Medical Response, Inc. ("AMR"), Bret Jackson, MacKenzie D'Lorio, and James P. Zwally ("AMR Defendants"); Lei Li; Dr. Raj K. Bansal; Dr. Amanda M. Sandrew; and Stephanie A. Sirois (collectively, "Defendants"). Am. Compl., ECF No. 8 (July 30, 2021) ("Am. Compl.").

Defendants have moved to dismiss on the basis of lack of subject matter jurisdiction or lack of personal jurisdiction, or, in the alternative, for failure to state a claim on which relief can be granted. *See* State Defs.' Joint Mot. to Dismiss, ECF No. 26 (Nov. 9, 2021); Def. Lei Li's Mot. to Dismiss, ECF No. 47 (Dec. 13, 2021); Fairfield Defs.' Mot. to Dismiss, ECF No. 50 (Dec. 13, 2021); Mot. to Dismiss, ECF No. 57 (Dec. 29, 2021); Amanda Sandrew, D.O.'s Rule 12(b) Mot. to Dismiss, ECF No. 68 (Jan. 7, 2022); Mot. to Dismiss, ECF No. 94 (Jan. 10, 2022); Mot. to Dismiss, ECF No. 111 (Jan. 24, 2022); Mot. to Dismiss, ECF No. 113 (Jan. 24, 2022); Mot. to Dismiss, ECF No. 116 (Jan. 24, 2022).

For the following reasons, the State Defendants' [26] motion to dismiss, Lei Li's [47] motion to dismiss, Dr. Bansal's [57] motion to dismiss, Dr. Sandrew's [68] motion to dismiss, SVMC Defendants I's [113] motion to dismiss, and SVMC Defendants II's [116] motion to dismiss are **GRANTED**.

The Town Defendants' [50] motion to dismiss, the AMR Defendants' [94] motion to dismiss, and St. Vincent's Medical Center's [111] motion to dismiss are **GRANTED in part** and **DENIED in part**.

Ms. Li's unreasonable seizure claim against Officer Peck and Mr. D'Lorio under § 1983; state law claim of false imprisonment against American Medical Response, Inc. and St. Vincent's Medical Center; and state constitutional claims under Article I, Section 7 and 9 of the Connecticut Constitution against Officer Peck, Mr. D'Lorio, the Town of Fairfield, American Medical Response, Inc., and St. Vincent's Medical Center will proceed. All other defendants who have appeared in this action are dismissed.[1]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

#### 1. 2016 Incident

On September 26, 2016, Ms. Li allegedly visited her daughter's school, Tomlinson Middle School, to make a discrimination complaint. Am. Compl. at 6 ¶ 1, 9 ¶ 6. Specifically, Ms. Li allegedly complained to the school's principal, Anthony Formato, about "discrimination against Asians in school education" and requested a sociology and health education curriculum.

---

[1] All of the defendants named in the Amended Complaint other than Stephanie A. Sirois have appeared in the action and filed a motion to dismiss. On January 9, 2022, Ms. Li moved for default entry under Federal Rule of Civil Procedure 55(a) with respect to Ms. Sirois. Pl.'s Mot. About Def. Stephanie Sirois's Default Entry 55(a), ECF No. 75 (Jan. 9, 2022). "While '[a]ffidavits of service [are] *prima facie* [evidence] that service was effected or attempted in the manner described therein,' the Court need not assume service was proper [ ] if the affidavits are inconsistent or unreliable." *Madej v. Synchrony Fin.*, No. 21-CV-1894-WFK-SJB, 2021 WL 7906552, at *1 (E.D.N.Y. Nov. 3, 2021) (internal citations omitted). Here, Ms. Li's affidavit of service in support of her motion for default entry indicates that service of the summons and Complaint was made on Ms. Sirois at 226 N. Line Street, Apt. 3, Moscow, ID 83843. First Summons Return Executed at 30, ECF No. 16-4 (Oct. 25, 2021). The address listed in the affidavit of service is different, however, from that listed for Ms. Sirois in the Complaint and Amended Complaint: 795 Tolland Tpke, Manchester, CT 06042. Am. Compl. at 5 ¶ 36; Compl. at 4 ¶ 32. Accordingly, Ms. Li has not provided sufficient evidence that Ms. Sirois was properly served, and the motion for default entry is **DENIED**. *See Madej*, 2021 WL 7906552, at *1 (concluding that that there was "no evidence that Defendant was properly served," where the affidavit of service "contain[ed] several discrepancies that render[ed] it unreliable," including that the address in the affidavit of service did not match the address listed in the summons and complaint); *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544-WFK-SJB, 2019 WL 13160047, at *3 (E.D.N.Y. July 25, 2019) (denying request for certificate of default due to "an unexplained disconnect between the address on the summons and the attempted service address"). In any event, even if Ms. Sirois had been properly served, the alleged claims against her, relating solely to the 2016 incident, *see* Am. Coml. at 10 ¶ 9, 36 ¶ 11, would have been dismissed, with all of the other 2016 incident-related claims, *see infra* Sections III.E.1, III.F.

*Id*. at 9 ¶ 6. After allegedly speaking with Mr. Formato, who allegedly was "very rude," Ms. Li allegedly was "walked . . . out" of the school by Morgan Rhodes, a school counselor. *Id*.

Ms. Li allegedly left the school to file a complaint with the Fairfield Board of Education. *Id*. Ms. Li alleges that Mr. Formato and Mr. Rhodes subsequently "falsely, maliciously, and willfully reported to Fairfield Police that [Ms. Li] went to [the] school and complained that [her] daughter was going to kill [her]." *Id*. at 10 ¶ 7. She alleges that after she returned from the Fairfield Board of Education, "the police and the principal conspired to send [her] to a mental hospital." *Id*. at 10 ¶ 9. A social worker, Stephanie Sirois, also allegedly spoke with Ms. Li. *Id*.

Before Ms. Sirois completed her evaluation of Ms. Li, the school or the police allegedly called American Medical Response, Inc., the Town of Fairfield's Emergency Medical Response System provider. *Id*. at 3 ¶ 16, 10 ¶ 9. After AMR arrived at the school, Ms. Li allegedly was put on a psychiatric involuntary hold. *Id*. at 10 ¶ 9.

Ms. Li's husband allegedly arrived at the school, informed the police that Ms. Li had no mental health issues, and requested to take her home. *Id*. at 10 ¶ 10. Fairfield Police Department Officer Lance Newkirchen allegedly denied Ms. Li's husband's request and stated that she would be brought to St. Vincent's Medical Center instead. *Id*.

After Ms. Li finished speaking with Ms. Sirois, Officer Newkirchen, Fairfield Police Department Officer Edward Kovac, and AMR employees Mr. Zwally and Mr. Jackson allegedly "came up to [her], violently pulled [her], and . . . choked [her] by the neck." *Id*. at 10 ¶ 11. Ms. Li alleges that "[s]everal men pulled [her] to the ambulance, [and] a person choked [her] neck and pressed [her] on the ambulance stretcher." *Id*. Medical records allegedly show that Ms. Li subsequently had two bruises around her neck. *Id*. Mr. Jackson then allegedly "injected some medicine into [Ms. Li's] body" and she "lost consciousness immediately." *Id*. at 10–11 ¶ 11. Ms.

Li alleges that these actions inflicted "serious psychiatric trauma," as well as post-traumatic stress disorder. *Id*. at 11 ¶ 11.

After the ambulance arrived at St. Vincent's Medical Center, Registered Nurse Kellie Clomiro allegedly signed an AMR report. *Id*. at 11 ¶ 13. Ms. Li alleges that Ms. Clomiro "made multiple false medical records to cover . . . illegal actions by SVMC, the police[,] and AMR." *Id*. at 11 ¶ 13; *see also id.* at 13 ¶ 22, 14 ¶ 29. She further alleges that AMR falsified its report to indicate that she and her family had requested transport to SVMC, *id*. at 11 ¶ 15; SVMC and SVMC employee Melissa Ortiz falsified medical records and wrongfully imprisoned her as an inpatient, *id*. at 12 ¶ 17; Dr. Clifford Schwartz, Ms. Li's Emergency Department provider, made a false diagnosis of acute psychosis, paranoid delusion, and psychosis, ordered antipsychotic medications without her consent, and made false statements in her medical record, *id.* at 12 ¶ 18; SVMC's Emergency Department performed a strip search on Ms. Li without her consent, *id.* at 13 ¶ 20; Ms. Li may have been sexually assaulted without her knowledge, *id.* at 13 ¶ 21; Ms. Sirois made false statements in her evaluation report, *id*. at 13 ¶ 24–14 ¶ 27; and Dr. Sharon Hasbani "illegally administered harmful psychosis medicines [*sic*]" without Ms. Li's consent and "falsified a Physician's Emergency Certificate" by referring to Ms. Li as "disabled," *id*. at 15 ¶¶ 32–33.

Later that day, Ms. Li's husband allegedly asked that she be discharged from the hospital. *Id*. at 14 ¶ 30. SVMC allegedly denied his request. *Id*. The following day, on September 27, 2016, Ms. Li's husband allegedly again requested to take Ms. Li home, and was denied. *Id*. at 15 ¶ 35. Ms. Li alleges that Registered Nurse Patricia Galich and several staff members subsequently "physically pushed [her] [in]to the corner of the room and gave [her] an injection of medicine," after which she became unconscious. *Id.*

Ms. Galich allegedly called the Nelson ambulance service to transport Ms. Li to SVMC's Behavioral Health Services in Westport, Connecticut. *Id.* at 15–16 ¶¶ 36–39.

Ms. Li alleges that Dr. Dora Orosz and Dr. Bruny Jacques Germain "made an incorrect diagnosis," "illegally prescribed psychiatric drugs" without her consent, and "ordered many other medicines [*sic*] under [her] name." *Id.* at 16 ¶ 45, 17 ¶ 47. She alleges that Dr. Lilliana Hernandez, Dr. Rahul Gupta, and Dr. Germain also repeatedly ordered creams under her name, failed to provide her with the creams, and made "false claims to [her] insurance company." *Id.* at 17 ¶ 46.

On September 30, 2016, Dr. Germain discharged Ms. Li from the hospital, allegedly under the wrong psychiatric diagnosis. *Id.* at 17 ¶ 48.

### 2. 2020 Incident

Four years later, on June 29, 2020 at 4:58 a.m., Ms. Li allegedly called 911 to request a security inspection of her house. *Id.* at 18 ¶ 52. Upon arrival, Fairfield Police Department Officer Richard Peck and another police officer allegedly "did not want to get to know the situation . . . or inspect the house." *Id.* The officers also allegedly did not permit Ms. Li's husband to translate on her behalf, and instead allegedly "restrained [her] and [her] husband separately in [their] yard." *Id.*

Officer Peck then allegedly forced Ms. Li into an ambulance outside her house and, along with AMR Emergency Medical Technician Mackenzie D'Lorio, tied her to a stretcher. *Id.* at 18 ¶ 53.

Ms. Li allegedly informed AMR that she may be pregnant, and that she did not want to be taken to St. Vincent's Medical Center due to her past experiences there in 2016. *Id.* Ms. Li

allegedly nevertheless was taken to SVMC, where she was "involuntarily commit[ted]" on psychiatric hold status. *Id.* at 18–19 ¶ 54.

AMR and the Fairfield Police Department allegedly made false reports to justify her involuntary commitment. *Id.* at 18–19 ¶ 54, 19 ¶ 57. Specifically, Ms. Li alleges that Officer Peck made false statements in his report that she had been hallucinating that she was seeing "spirits or dragons etc." in her house. *Id.* at 19 ¶ 56. Officer Peck also allegedly made false statements that Ms. Li "thought someone was bugging [her] house and hacking [her] cell phone, which [she] never said." *Id.*

At SVMC in Bridgeport, Connecticut, Ms. Li allegedly was forced to sign a document agreeing to pay the full cost as an inpatient without explanation. *Id.* at 20 ¶ 61.

Ms. Li alleges that Dr. Christopher Orelup made false statements in his medical report, including false diagnoses of acute psychosis, delusional disorder, and hypokalemia. *Id.* at 21 ¶ 65, 21 ¶ 67. Dr. Orelup also allegedly made "illegal inpatient orders without [her] consent," *id.* at 21 ¶ 66, and "fabricated a COVID-19 related medical record[]" with Liu Jingchun and Lei Li, Clinical Laboratory Director of Jackson Laboratory, *id.* at 22 ¶ 71.

Ms. Li later allegedly was transferred to SVMC's Behavioral Health Services in Westport. *Id.* at 22 ¶ 73. On June 29, 2020, Dr. Bujji Surapaneni allegedly issued a Unit Restriction Order and prescribed psychiatric medication, which Ms. Li alleges she was forced to take without her consent. *Id.* at 26–27 ¶ 75. On June 30, 2022, Registered Nurse Cynthia Campbell, Dr. Kelechi Ogbonna, and Registered Nurse James Richard allegedly "grabbed" Ms. Li to place her back in her room. *Id.* at 27 ¶ 76. Dr. Ogbonna then allegedly issued a Restraint Frequent monitoring order that restricted Ms. Li from leaving her room. *Id.*

Ms. Li alleges that Ms. Campbell forced her to take psychiatric medication, even after she informed Ms. Campbell that she was pregnant. *Id.* at 27 ¶ 77. Ms. Campbell allegedly told Ms. Li that she was not pregnant, and, along with Dr. Ogbonna and Mr. Richards, injected her with an unspecified medication. *Id.*

On July 5, 2020, several nurses allegedly forced Ms. Li to take medication without her consent. *Id.* at 28 ¶ 81. On July 8, 2020, Registered Nurse Cynthia Anderson allegedly told Ms. Li that she was not pregnant and gave her psychiatric medication. *Id.* at 28 ¶ 83.

Ms. Li alleges that she may have been sexually assaulted at SVMC on June 30, July 5, and July 8, 2020. *Id.* at 29 ¶ 84.

On July 2 and July 7, 2020, Dr. Surapaneni, Ms. Harrell, and Mr. Lieberman allegedly wrote "false accusation letters" to the Probate Court, seeking involuntary commitment, the dispensation of medication without Ms. Li's consent, and the appointment of a conservator with authority to give informed consent for psychotropic medications. *Id.* at 29 ¶ 87–30 ¶ 90.

SVMC employee Nadine Ritt, Ms. Li's treatment coordinator, allegedly made false statements in her report, including that Ms. Li's stay at SVMC was "voluntary" and that her husband supported her stay in the hospital. *Id.* at 33 ¶ 109.

On July 20, 2020, the Westport Probate Court allegedly found that Ms. Li (1) was not gravely disabled and should not be involuntarily committed; (2) should not be forced to take medication without her informed consent; and (3) did not require the appointment of a conservator. *Id.* at 34 ¶ 114.

Ms. Li alleges that the 2016 and 2020 incidents are part of an ongoing conspiracy among the Town of Fairfield, Fairfield Police Department, AMR, and St. Vincent's Medical Center to

violate her rights based on animus towards individuals of Asian descent. *See, e.g.*, *id.* at 31 ¶ 96, 31–32 ¶ 101, 33 ¶ 112, 48 ¶¶ 89–94.

### B. Procedural Background

On July 21, 2021, Ms. Li filed a Complaint *pro se* in federal court. Compl.

On July 30, 2021, Ms. Li filed an Amended Complaint *pro se*, alleging, with respect to the 2016 incident, (1) illegal detention of a minor and deprivation of parental rights; (2) false arrest; (3) suspected sexual assault; (4) false statements in police reports; (5) false statements in her AMR medical records; (6) civil conspiracy to involuntarily commit Ms. Li; (7) involuntary outpatient treatment; (8) racial profiling; (9) racial discrimination by the Town of Fairfield; and (10) false imprisonment and illegal medication without informed consent. Am. Compl. at 34–40. Ms. Li further alleges, with respect to the 2020 incident, (1) false imprisonment and involuntary psychiatric commitment; (2) involuntary commitment; (3) abuse of process and false statements; (4) discrimination by the Town of Fairfield; (5) violations of the Connecticut State Constitution, and (6) violations of the Fourth, Fifth, Sixth, and Ninth Amendments to the United States Constitution. *Id.* at 41–49. In addition, throughout the Amended Complaint, Ms. Li alleges violations of her federal constitutional and statutory rights under 42 U.S.C. § 1983. *See, e.g.*, *id.* at 5 ¶ 1.

On October 13, 2021, Ms. Li moved to amend her Amended Complaint. Mot. by Self-Represented Litigant to Amend Compl. and Issue Revised Summons, ECF No. 14 (Oct. 13, 2021). The Court denied Ms. Li's motion to amend on October 18, 2021, without prejudice to renewal with an indication as to whether Defendants consent to the filing of a second amended complaint. Order, ECF No. 15 (Oct. 18, 2021).

On November 9, 2021, the State Defendants moved to dismiss the Amended Complaint, on the basis of: (1) lack of subject matter jurisdiction under the Eleventh Amendment; and (2) failure to state a claim. State Defs.' Joint Mot. to Dismiss, ECF No. 26 (Nov. 9, 2021); Joint Mem. of Law in Supp. of State Defs.' Mot. to Dismiss, ECF No. 26-1 (Nov. 9, 2021) ("State Defs. Mot."). Ms. Li opposed the State Defendants' motion to dismiss on November 16, 2021. Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 32 (Nov. 16, 2021) ("Opp'n to State Defs.").

On December 13, 2021, Lei Li filed a second motion to dismiss, on the grounds that: (1) the Amended Complaint fails to allege sufficient facts concerning Lei Li's role in the alleged incidents, and there is no allegation tying Lei Li to any state action; and (2) Lei Li was not properly served with the summons and Complaint. Def. Lei Li's Mot. to Dismiss, ECF No. 47 (Dec. 13, 2021); Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 47-1 (Dec. 13, 2021) ("Lei Li Mot."). On December 28, 2021, Ms. Li filed a response to Lei Li's motion to dismiss. Pl.'s Opp'n to Def. Lei Li's Mot. to Dismiss, ECF No. 56 (Dec. 28, 2021) ("Opp'n to Lei Li Mot.").

On December 13, 2021, the Town Defendants filed a third motion to dismiss, on the grounds that: (1) police departments, as sub-units of the municipal government, are not subject to suit under § 1983; (2) Ms. Li's claims arising out of the 2016 incident are untimely; (3) the Town Defendants are entitled to qualified immunity from Ms. Li's federal civil rights claims; (4) the Amended Complaint fails to state a claim upon which relief can be granted; and (5) the Town Defendants are entitled to immunity from Ms. Li's intentional tort claims under Connecticut General Statutes § 52-557n. Fairfield Defs.' Mot. to Dismiss, ECF No. 50 (Dec. 13, 2021); Mem. of Law in Supp. of Fairfield Defs.' Mot. to Dismiss, ECF No. 50-1 (Dec. 13, 2021) ("Town Defs.' Mot."). On January 2, 2022, Ms. Li opposed the Town Defendants' motion to dismiss. Pl.'s Opp'n Resp. to Fairfield Defs. Document 50 and 50-1 and Mot., ECF No. 59 (Jan. 2, 2022).

The Town Defendants filed a reply in support of their motion to dismiss on January 18, 2022. Fairfield Defs.' Reply to Pl.'s Obj. to Mot. to Dismiss, ECF No. 103 (Jan. 18, 2022).

On December 15, 2021, the Town Defendants also moved to stay discovery, pending the Court's disposition of their motion to dismiss. Mot. for Stay of Discovery, ECF No. 55 (Dec. 15, 2021). Ms. Li opposed the Town Defendants' motion. Pl.'s Opp'n and Obj. to Fairfield Defs. Document 55 and 55-1 and Mot., ECF No. 60 (Jan. 3, 2022). On January 4, 2022, the Court stayed any discovery or responses to any discovery already served until the resolution of any and all pending motions to dismiss in this case. Order, ECF No. 62 (Jan. 4, 2022). The Court subsequently denied the Town Defendants' motion to stay discovery as moot. Order, ECF No. 63 (Jan. 4, 2022).

On December 29, 2021, Dr. Bansal filed a fourth motion to dismiss, on the basis that: (1) as a court-appointed psychiatrist, Dr. Bansal is entitled to absolute immunity; (2) Ms. Li fails to state a claim under the Racketeer Influenced and Corrupts Organizations Act and the Corrupt Organizations and Racketeering Activity Act; and (3) Ms. Li fails to allege that Dr. Bansal has violated the United States or Connecticut Constitution. Mot. to Dismiss, ECF No. 57 (Dec. 29, 2021); Mem. in Supp. of Mot. to Dismiss, ECF No. 57-1 (Jan. 3, 2022) ("Bansal Mot."). On January 19, 2022, Ms. Li filed an objection to Dr. Bansal's motion to dismiss. Opp'n to Def. Raj. Bansal Mot. to Dismiss Document 57, ECF No. 109 (Jan. 19, 2022); Mem. of Law in Supp. of Pl.'s Opp'n to Def. Raj Bansal's Mot. to Dismiss, ECF No. 57, 109-1 (Jan. 19, 2022).

On January 7, 2022, Dr. Sandrew filed a fifth motion to dismiss on the basis of: (1) lack of subject matter jurisdiction because Dr. Sandrew is a court-appointed psychiatrist entitled to absolute immunity, and (2) the Amended Complaint fails to state a claim against Dr. Sandrew upon which relief can be granted. Amanda Sandrew, D.O.'s Rule 12(b) Mot. to Dismiss, ECF

No. 68 (Jan. 7, 2022); Amanda Sandrew, D.O.'s Mem. of Law in Supp. of Rule 12(b) Mot. to Dismiss, ECF No. 69 (Jan. 7, 2022) ("Sandrew Mot."). Ms. Li objected to Dr. Sandrew's motion to dismiss on January 24, 2022. Opp'n to Def. Amanda Sandrew's Mot. to Dismiss Document 68, 69, ECF No. 120 (Jan. 24, 2022); Mem. of Law in Supp. of Pl.'s Opp'n to Def. Amanda Sandrew [*sic*] Mot. to Dismiss Document 68, 69, ECF No. 120-1 (Jan. 24, 2022).

On February 16, 2022, Dr. Sandrew filed a reply in support of her motion to dismiss. Amanda Sandrew, D.O.'s Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 130 (Feb. 16, 2022).

On February 20, 2022, Ms. Li filed, without seeking leave of the Court, a sur-reply to Dr. Sandrew's. Pl.'s Resp. to Document 130 Def.'s Reply, ECF No. 131 (Feb. 20, 2022).

On January 10, 2022, the AMR Defendants filed a sixth motion to dismiss the Amended Complaint, arguing that: (1) the AMR Defendants are private actors not subject to claims under § 1983; (2) vicarious liability is inapplicable to § 1983 actions; (3) the Amended Complaint fails to state a claim upon which relief can be granted under § 1983; and (4) Ms. Li fails to state a claim for which relief can be granted relating to the 2016 incident. Mot. to Dismiss, ECF No. 94 (Jan. 10, 2022); Mem. of Law in Supp. of Mot. to Dismiss, EF No. 94-1 (Jan. 10, 2022) ("AMR Defs. Mot."). Ms. Li opposed the AMR Defendants' motion to dismiss. Pl.'s Opp'n to Defs. Mot. to Dismiss, ECF No. 125 (Jan. 31, 2022); Mem. of Law in Supp. of Pl.'s Opp'n to Defs. Mot. to Dismiss, ECF No. 125-1 (Jan. 31, 2022). On February 14, 2022, the AMR Defendants filed a reply in support of their motion to dismiss. Defs.' Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 126 (Feb. 14, 2022). On February 23, 2022, Ms. Li filed, without seeking leave of the Court, a sur-reply to the AMR Defendants' reply. Pl.'s Resp. to Document 126 AMR Defendants' Reply, ECF No. 134 (Feb. 23, 2022).

On January 24, 2022, SVMC filed a seventh motion to dismiss, arguing that: (1) as a private hospital, SVMC did not act under color of state law and, therefore, Ms. Li may not allege a § 1983 claim; (2) SVMC cannot be held vicariously liable for the actions of its employees under § 1983; and (3) Ms. Li's claims arising from the 2016 incident are barred by the statute of limitations; (4) Ms. Li fails to state claims upon which relief can be granted; (5) the Court lacks personal jurisdiction over SVMC; and (6) the Amended Complaint should be dismissed as frivolous. Mot. to Dismiss, ECF No. 111 (Jan. 24, 2022); Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 111-1 (Jan. 24, 2022) ("SVMC Mot."). Ms. Li filed an opposition to SVMC's motion to dismiss on February 14, 2022. Resp. Mem. to 111 Mot. to Dismiss and Mot. ECF No. 127 (Feb. 14, 2022). On March 21, 2022, St. Vincent's Medical Center filed a reply in support of its motion to dismiss. Reply to Obj. to Mot. to Dismiss, ECF No. 138 (Mar. 21, 2022).

On January 24, 2022, SVMC Defendants I filed an eighth motion to dismiss, on the basis of: (1) lack of subject matter jurisdiction because SVMC Defendants I, as private actors, are not subject to § 1983; (2) lack of personal jurisdiction because SVMC Defendants I were not properly served; (3) failure to state a claim upon which relief can be granted; (4) lack of personal jurisdiction because Ms. Li has failed to comply with the statutory requirements for alleging a medical malpractice claim; and (5) frivolity. Mot. to Dismiss, ECF No. 113 (Jan. 24, 2022); Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 113-1 (Jan. 24, 2022) ("SVMC Defs. I Mot.").

On the same day, SVMC Defendants II filed a ninth motion to dismiss on substantially the same grounds. Mot. to Dismiss, ECF No. 116 (Jan. 24, 2022); Defs.' Mem. of Law in Supp. of Mot. to Dismiss Am. Compl., ECF No. 116 (Jan. 24, 2022).

13

On February 14, 2022, Ms. Li filed oppositions to SVMC Defendants I's and SVMC Defendants II's motions to dismiss. Resp. and Mem. to 113 Mot. to Dismiss and Mot., ECF No. 128 (Feb. 14, 2022); Resp. and Mem. to 116 Mot. to Dismiss and Mot., ECF No. 129 (Feb. 14, 2022). SVMC Defendants I and SVMC Defendants II filed replies in support of their motions to dismiss on March 21, 2022. Reply to Obj. to Mot. to Dismiss, ECF No. 137 (Mar. 21, 2022); Reply to Obj. to Mot. to Dismiss, ECF No. 139 (Mar. 21, 2022).

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The Court may also, however, resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B. Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'") (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci*, 673 F.3d at 59; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-CV-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff." (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (summary order), *as amended* (Sept. 23, 2011). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### C. **Rule 12(b)(6)**

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal

quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d

Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the

"special solicitude" courts afford *pro se* litigants).

## III.   DISCUSSION

### A.   Immunity

#### 1.   Eleventh Amendment Immunity

The Eleventh Amendment divests the court of subject matter jurisdiction over claims for

money damages against state officials acting in their official capacities unless the state has

waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169

(1985) ("The Court has held that, absent waiver by the State or valid congressional override, the

Eleventh Amendment bars a damages action against a State in federal court. This bar remains in

effect when State officials are sued for damages in their official capacity." (citation

omitted)); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) ("The Eleventh Amendment bars

the award of money damages against state officials in their official capacities."). Section 1983

does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 343

(1979); *Sargent v. Emons*, 582 F. App'x. 51, 52 (2d Cir. 2014) (summary order) ("[I]t is well

established that Congress did not abrogate state sovereign immunity in enacting 42 U.S.C. §

1983 . . . .").

The State Defendants argue that the Amended Complaint's claims against them are

barred by the Eleventh Amendment, as they have been served only in their official capacities

through service on the Office of the State Attorney General. State Defs. Mot. at 2–3. They argue

that none of the exceptions to Eleventh Immunity apply because the Amended Complaint does

not allege an ongoing violation of federal law, and seeks money damages rather than prospective injunctive relief. *Id.* at 3.

The Court agrees.

Rule 4(e) of the Federal Rules of Civil Procedure provides, in relevant part, that:

> [u]nless a federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). In the present case, the Amended Complaint does not specify whether Ms. Li has sued the individual State Defendants—former State Department of Mental Health and Addiction Services Commissioner Miriam E. Delphin-Rittmon, Chief State's Attorney Richard Colangelo, and Fairfield State's Attorney Joseph T. Corradino—in their individual or official capacities.

Ms. Li's proof of service, however, indicates that Ms. Delphin-Rittmon, Mr. Colangelo, and Mr. Corradino have not been served personally or by an agent authorized to receive service personally on their behalf. *See* ECF No. 16 at 30–32 (July 30, 2021) (proof of service on Mr. Colangelo indicating service on the Office of the State's Attorney General); ECF No. 16-1 at 1–3, 7–9 (July 30, 2021) (proof of service on Ms. Delphin-Rittmon and Mr. Corradino indicating service on the Office of the State's Attorney General). Thus, Ms. Li has not served the defendants in their individual capacity under Rule 4(e)(2).

Nor has Ms. Li served Ms. Delphin-Rittmon, Mr. Colangelo, and Mr. Corradino in accordance with Connecticut state law under Rule 4(e)(1). Connecticut law provides that delivery to the Attorney General constitutes service on an individual state officer or employee as an officer or employee of the state. Conn. Gen. Stat. § 52-64(a) ("Service of civil process in any civil action or proceeding maintainable against . . . the state or . . . any officer . . or employee of the state . . . may be made by. . . leaving a true and attested copy of the process . . . with the Attorney General or at the office of the Attorney General in Hartford . . . ."). "This provision on its face does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity." *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507 (2d Cir. 2006). Connecticut law instead provides that service on an officer or employee of the state in their individual capacity must be made by "leaving [the summons and complaint] with the defendant[] or at his usual place of abode." Conn. Gen. Stat. § 52-57(a); *see also Bogle-Assegai*, 470 F.3d at 507–08 (service through the Connecticut Attorney General is not an authorized method for serving the defendants in their individual capacities (citing *Banerjee v. Roberts*, 641 F. Supp. 1093, 1099 (D. Conn. 1986))).

Because Ms. Li has sued the State Defendants only in their official capacities, and as she does not allege a continuing violation of federal law or seek prospective injunctive relief, *see* Am. Compl. at 50 (requesting compensatory and punitive damages), her claims against these defendants are barred by the Eleventh Amendment.[2]

---

[2] Ms. Li argues that the State Defendants misconstrue the Eleventh Amendment to prohibit claims against state officials by citizens of the same state, rather than citizens of another state. Opp'n to State Defs. at 3. It is well-established, however, that "a suit for damages against a state by a citizen of the same state, although not specifically prohibited by the [Eleventh] Amendment's language, is barred." *Fitzpatrick v. Bitzer*, 519 F.2d 559, 563 (2d Cir. 1975) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)), *aff'd in part, rev'd in part on other grounds*, 427 U.S. 445 (1976).

Accordingly, Ms. Li's claims against the State Defendants will be dismissed.[3]

## 2. Absolute Immunity

"Certain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 485 (1991)). "Accordingly, a private individual 'may be afforded the absolute immunity ordinarily accorded judges . . . if his role is functionally comparable to that of a judge . . . or if [his] acts are integrally related to an ongoing judicial proceeding.'" *Walton v. Rubel*, No. 16-CV-1989 (ENV) (LB), 2018 WL 3369664, at *3 (E.D.N.Y. July 10, 2018) (quoting *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004)); *see also Allen v. Zhong*, No. 3:20-CV-1860 (JAM), 2020 WL 7645431, at *1 (D. Conn. Dec. 23, 2020) ("It is well-established that judges have absolute immunity from lawsuits for money damages for those actions that they take in their judicial capacity. Many courts have similarly recognized immunity for doctors and other professionals who perform court-ordered examinations for purposes of court proceedings." (internal citations omitted)); *Kalman v. Carre*, 352 F. Supp. 2d 205, 207–08 (D. Conn. 2005) ("[W]here an official who is not a judge nonetheless performs a judicial function, absolute immunity will attach.").

---

[3] Significantly, even if Ms. Li had sued the individual State Defendants—former State Department of Mental Health and Addiction Services Commissioner Miriam E. Delphin-Rittmon, Chief State's Attorney Richard Colangelo, and Fairfield State's Attorney Joseph T. Corradino—in their individual capacities, *see Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that "state officials, sued in their individual capacities, are 'persons within the meaning of § 1983," and therefore "[t]he Eleventh Amendment does not bar such suits"), the Court still would have to dismiss these claims, at least based on the allegations in the Amended Complaint, *see Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) ("[A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own actions, has violated the Constitution.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009))); *see also Anilao v. Spota*, 27 F.4th 855, 853 (2d Cir. 2022) ("The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy.").

Dr. Sandrew and Dr. Bansal argue that they are entitled to absolute immunity from suit because they are physicians who were appointed by the Connecticut Probate Court in July 2020 to perform a psychiatric evaluation of Ms. Li in connection with a petition for commitment, as required by Connecticut General Statutes § 17a-498. Sandrew Mot. at 6–7; Bansal Mot. at 4–5.

The Court agrees.

Connecticut General Statutes § 17a-498 provides that upon receiving an application for commitment, the Probate Court "shall require the certificates, signed under penalty of false statement, of at least two impartial physicians selected by the court," who shall in their certificate "indicate that they have personally examined [the respondent] within ten days . . . ." Conn. Gen. Stat. § 17a-498(c). In accordance with Connecticut law, Dr. Sandrew and Dr. Bansal each performed a psychiatric evaluation of Ms. Li and completed a Physician's Certification following the examination, which they submitted to the Connecticut Probate Court. *See* Sandrew Mot. at 6; Bansal Mot. at 1–2, 5; Am. Compl. at 32 ¶¶ 105–106 (alleging that Dr. Bansal and Dr. Sandrew "maliciously falsified records," and that Dr. Bansal "interviewed me via the internet" and "testified with a lie in the Probate Court hearing on July 20 that she came to the hospital and visited me in person"); *id.* at 33 ¶ 111 (alleging that "SVMC filed a petition against me in the Probate Court").

Thus, the examinations conducted by Dr. Bansal and Dr. Sandrew, which comprise the wrongful conduct and false statements alleged by Ms. Li, "would have been, and were, conducted pursuant to a court order." *Walton*, 2018 WL 3369664, at *3. "Given the integral and inseparable connection of these examinations to the in-court" proceeding in Probate Court, Dr. Bansal and Dr. Sandrew are entitled to absolute immunity from suit. *Id.*; *Kalman*, 352 F. Supp. 2d at 209 (holding that "the doctors responsible for preparing and providing psychological

reports to the Connecticut courts in the course of such courts' determination of an individual's mental health and confinement status are entitled to absolute immunity in the course of performing such function." (citing *Hili v. Sciarrotta*, 140 F.3d 210, 214 (2d Cir. 1998))).

Accordingly, Ms. Li's claims against Dr. Bansal and Dr. Sandrew will be dismissed.

### B. Personal Jurisdiction

St. Vincent's Medical Center, SVMC Defendants I, and SVMC Defendants II (collectively, "SVMC Defendants") argue that the Court lacks personal jurisdiction over them because Ms. Li has failed to comply with Connecticut General Statutes § 52-190a. SVMC Mot. at 22–26; SVMC Defs. I at 20–25; SVMC Defs. II at 23–27.

The Court disagrees.

Section 52-190a(a) provides that a party filing a medical malpractice action must first make a "reasonable inquiry . . . to determine that there are grounds for a good faith belief that there has been negligence." Conn. Gen. Stat. § 52-190a(a). To implement this requirement, a party must attach to the complaint "a certificate . . . [stating] that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action." *Id.* Specifically, the party shall obtain "a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence," and attach a redacted copy of the opinion to the certificate. *Id.* "[F]ailure to obtain and file the written opinion required by subsection (a) . . . shall be grounds for the dismissal of the action." *Id.* § 52a-190a(c).

In *Corley v. United States*, the Second Circuit held that "§ 52-190a is a procedural rule," that does not apply in actions brought under the Federal Tort Claims Act, or FTCA. 11 F.4th 79, 82 (2d Cir. 2021). The court reasoned that in an FTCA case, "[a]ll that Federal Rule of Civil Procedure 8 requires . . . is a 'short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Id.* at 88–89 (quoting Fed. R. Civ. P. 8(a)(2)). This policy of "notice

pleading," the court continued, "is in direct contrast to the heightened pleading requirement in §

52-190a." *Id.* Therefore, the Second Circuit concluded, the district court erred by applying § 52-

190a rather than the Federal Rules of Civil Procedure. *Id.*

Courts in this District have extended this reasoning beyond the FTCA to medical

malpractice claims brought generally in federal court. As one court observed, § 52-190a "erects a

'heightened pleading requirement' in conflict with the Federal Rules of Civil Procedure," and

thus "the requirements of Section 52-190a do not apply in federal court." *Wynne v. Town of E.*

*Hartford*, No. 3:20-CV-001834 (JCH), 2021 WL 5494606, at *9 (D. Conn. Nov. 23, 2021)

(quoting *Corley*, 11 F.4th at 89). "Rather, litigants must meet the pleading standards of the

Federal Rules of Civil Procedure," that is, "they must plead 'sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face.'" *Id.* (internal citation and quotation

marks omitted); *see also Solek v. Wallace*, No. 3:20-CV-1600 (OAW), 2022 WL 1063750, at *3

(D. Conn. Apr. 8, 2022) (stating that *Corley* "hold[s] that § 52-190a is inapplicable to

malpractice actions brought in federal court").

This reasoning applies with equal force here. To the extent Ms. Li alleges a medical

malpractice claim, the requirements of § 52-190a do not apply in federal court and, therefore, the

Court has personal jurisdiction over the SVMC Defendants. *See Wynne*, 2021 WL 5494606, at

*9 ("[I]n the instant case, wherein the court exercises supplemental jurisdiction over the state law

claims, the pleadings must adhere to the requirements set forth in the Federal Rules of Civil

Procedure."); *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 413 (W.D.N.Y. 2018) ("Federal courts

sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal

procedural law.").

Accordingly, the SVMC Defendants' motion to dismiss for lack of personal jurisdiction will be denied.

### C.  The Claims Against Municipal Defendants

The Town Defendants argue that Ms. Li's claims against the Fairfield Police Department and the Fairfield Emergency Communications Center ("FECC") must be dismissed in their entirety because, as sub-units of the municipal government, these defendants are not "capable of being sued separately from the municipal entity they serve." Town Defs. Mot. at 12.

The Court agrees.

"Courts in Connecticut have held that the 'Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued . . . . Rather, [under] Connecticut enabling legislation, it is the municipality itself which possesses the capacity to sue and be sued.'" *Rose v. City of Waterbury*, No. 3:12-CV-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (quoting *Arteaga v. Town of Waterford*, No. HHDX07CV5013377S, 2010 WL 1611377, at *9 (Conn. Super. Ct. Mar. 16, 2010)).

The Amended Complaint alleges that the Fairfield Emergency Communications Center is a "centralized 911 call center and answering point for both emergency and non-emergency requests for Police, Fire and Medical services" in Fairfield Connecticut, and is "located within the Fairfield Police Department's Headquarters." Am. Compl. at 3 ¶ 15. According to the Amended Complaint's allegations, FECC is a municipal department of the Town of Fairfield, and therefore is not subject to suit. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D.

Conn. 2005) (holding that a municipal police department is not a municipality or a person subject to suit under § 1983 (collecting cases)).

Accordingly, the Court will dismiss Ms. Li's claims against the Fairfield Police Department and FECC.

### D.  The Claims Against Lei Li

Lei Li moves to dismiss the Amended Complaint, to the extent any claims are raised against her, because none of the Amended Complaint's causes of action "mention this [d]efendant[,] much less allege sufficient facts that would support a plausible claim for relief against her." Lei Li Mot. at 3.

The Court agrees.

The Amended Complaint alleges that Lei Li is the Clinical Laboratory Director of the Jackson Laboratory, Am. Compl. at 5 ¶ 35, and that Dr. Orelup of St. Vincent's Medical Center "fabricated a COVID-19 related medical records [*sic*] together with defendant Liu Jingchun of SVMC and defendant Lei Li of The Jackson Laboratory," *id.* at 22 ¶ 71. Apart from these allegations, the Amended Complaint pleads no facts relating to Lei Li. Indeed, although the Amended Complaint purports to raise certain claims against all Defendants, *see, e.g.*, Am. Compl. at 49 ¶ 95, it does not include any allegations in its causes of action against Lei Li.

Ms. Li argues that the Amended Complaint plausibly alleges that Lei Li, as the director of the Jackson Laboratory, "infring[ed] on the [P]laintiff's personally identifiable information protected by the Health Insurance Portability and Accountability Act of 1996 [("HIPAA")] and made a false COVID analysis report." Opp'n to Lei Li Mot. at 1. Ms. Li contends that Lei Li also "violated regulations issued by the Department of Justice and the Department of Health & Human Services, and infringed the [P]laintiff's civil rights." *Id.* at 2.

The Amended Complaint does not allege, however, that Lei Li misused Ms. Li's personal information or violated federal regulations, and Ms. Li may not now seek to further amend the Amended Complaint by including new allegations in her response. *See Schulz v. Medtronic, Inc.*, No. 3:21-CV-00414 (MPS), 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) ("[O]n a motion to dismiss, [the Court] may not consider facts outside of the Complaint." (first citing *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2006) (limiting "consideration [on a motion to dismiss] to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference"); and then citing *Weir v. City of New York*, No. 05-CV-9628 (DFE), 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (internal citation and quotation marks omitted))).

Just as importantly, as discussed further below, any alleged § 1983 claims brought against Lei Li fail as a matter of law.

Accordingly, the Amended Complaint does not form the basis for a claim for relief against Lei Li. Any claims, state or federal, against Lei Li will be dismissed.

### E.  The Section 1983 Claims

#### 1.  Statute of Limitations

"Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queen's Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Id.*

Defendants argue that Ms. Li's § 1983 claims arising from the 2016 incident are time-barred. *See* Town Defs. Mot. at 14; SVMC Mot. at 12–13; SVMC Defs. II Mot. at 13–15; AMR Defs. Mot. at 8–9.

The Court agrees.

While 42 U.S.C. § 1983 does not contain an explicit statute of limitations, the Second Circuit has held that claims arising under § 1983 are subject to the three-year limitations period in Connecticut General Statutes § 52-577. *See Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998) ("When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994))); *Rivera v. Mucha*, No. 3:21-CV-316 (SVN), 2022 WL 1205203, at *2 (D. Conn. Apr. 22, 2022) ("Courts in this district generally subject § 1983 claims to the three-year limitations period of Connecticut General Statutes § 52-577, which pertains to general tort claims not specifically covered by different limitations provisions.").

In this case, Ms. Li alleges that the 2016 incident occurred on September 26, 2016, and that she was involuntarily committed at St. Vincent's Medical Center until she was discharged on September 30th of that year. Ms. Li filed her Complaint on July 21, 2021. *See* Compl., ECF No. 1 (July 21, 2021). Assuming Ms. Li's § 1983 claims accrued when she was discharged from SVMC on September 30, 2016, more than three years have elapsed between the accrual of her claims and the filing of the Complaint. Ms. Li also has not argued, nor does the Amended Complaint suggest, that the three-year period has been tolled or that she is otherwise entitled to equitable relief. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.").

Accordingly, Ms. Li's § 1983 claims arising from the 2016 incident are untimely, and these claims will be dismissed. As Ms. Li does not raise any allegations against Mr. Formato, Mr. Rhodes, Officer Newkirchen, Officer Kovac, and SVMC Defendants II except with respect to the 2016 incident, her § 1983 claims against these defendants will be dismissed in their entirety.

### 2. State Action

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Section 1983 does not provide a remedy with respect to "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (internal quotation marks omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). To state a § 1983 claim, the complaint must indicate that the relevant action causing the constitutional deprivation was "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

To prove an action is attributable to the State, "a plaintiff must establish both that [the] alleged constitutional deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263–64 (2d Cir. 2014) (internal citations and quotation marks omitted). The latter inquiry requires proof that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 264 (internal citations and quotation marks omitted).

At the pleading stage, a plaintiff need not conclusively prove state action but must plausibly allege that it occurred by relying on more than "vague and conclusory" statements. *White v. Monarch Pharm., Inc.*, 346 Fed. App'x 739, 741 (2d Cir. 2009) (summary order) (citation omitted) (affirming dismissal of a § 1983 claim for failing to plausibly allege state action); *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (citation omitted) (same); *Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." (citation omitted)).

The AMR Defendants, SVMC Defendants, and Lei Li move to dismiss Ms. Li's claims against them on the grounds that they are not state actors for purposes of § 1983.

The Court will address each defendant in turn.

### a. The AMR Defendants

"A private party's conduct constitutes state action if it satisfies one of the three tests laid out by the Supreme Court: (1) the state compulsion test; (2) the close nexus/joint action test; or (3) the public function test." *Edwards v. Baptiste*, No. 3:06-CV-00952 (PCD), 2006 WL 3618021, at *2 (D. Conn. Dec. 11, 2006). Under the state compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982). Under the close nexus/joint action test, state action may be found where the government has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 357–58 (1974). Finally, under the

public function test, the private party must perform a function that is "traditionally the exclusive prerogative of the State." *Id.* at 353; *see also Blum,* 457 U.S. at 1005 (same).

The AMR Defendants argue that they are not subject to Ms. Li's § 1983 claims because AMR is a private entity and Mr. Jackson, Mr. D'Lorio, and Mr. Zwally are "medical providers who were employed by American Medical Response, Inc." AMR Defs. Mot. at 5. They contend that there are "no factual allegations within the [Amended] Complaint to demonstrate [that the AMR] Defendants were acting under the color of state law." *Id.* at 6.

The Court disagrees.

Under the "joint action" test, a private actor can be found "to act 'under color of' state law for § 1983 purposes [if] . . . [the private party] is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). To establish joint action, a plaintiff must show that the private citizen and the state official "shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Anilao v. Spota*, 774 F. Supp. 2d 458, 498 (E.D.N.Y. 2011) (quoting *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)). The plaintiff must demonstrate that "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Grogan*, 768 F.3d at 264 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). While "[t]he touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom or policy' shared by the private actor and the police," *Forbes v. City of New York*, No. 05-CV-7331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272 (2d Cir. 1999)), courts have recognized that state action can occur through "winks and nods," *Brentwood*, 531 U.S. at 301.

Contrary to the AMR Defendants' contention, the Amended Complaint alleges that AMR is the Town of Fairfield's "current EMS provider." Am. Compl. at 3 ¶ 16. The Amended Complaint also alleges that Mr. D'Lorio is an AMR Emergency Medical Technician ("EMT"), and that he, along with Officer Peck, "tied [Ms. Li] to a stretcher in the ambulance," and later "created false records that [Mr. D'Lorio] took [Ms. Li's] vital signs." Am. Compl. at 3 ¶ 18, 18 ¶ 53, 19 ¶ 57. At this stage of the proceedings, and pending further development of the factual record, these allegations are sufficient to infer that Mr. D'Lorio acted jointly with the Town of Fairfield when they allegedly compelled her transport to and involuntary psychiatric commitment at St. Vincent's Medical Center in June 2020. *See, e.g.*, *Mizrahi v. City of New York*, No. 15-CV-6084 (ARR) (LB), 2018 WL 3848917, at *7 (E.D.N.Y. Aug. 13, 2018) (denying summary judgment where "a reasonable juror could conclude that the individual EMT defendants were willful participant[s] in joint action with the State or its agents" (internal citation and quotation marks omitted)); *cf. Hollman v. County of Suffolk*, No. 06-CV-3589 (JFB) (ARL), 2011 WL 2446428, at *8 (E.D.N.Y. June 15, 2011) (finding no joint action where the "undisputed record" reflected that the EMTs "did not willingly participate in joint action with the defendant police officers in denying [the] decedent medical treatment while in custody" (emphasis omitted)).

Accordingly, the Court will deny the AMR Defendants' motion to dismiss Ms. Li's § 1983 claims on this basis.

### b.  The SVMC Defendants

"As a general rule, private hospitals do not act under color of state law for § 1983 purposes." *Febres v. Yale New Haven Hosp.*, No. 19-CV-1195 (KAD), 2019 WL 7050076, at *2 (D. Conn. Dec. 23, 2019) (internal citation and quotation marks omitted); *see also Doe v.*

*Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (per curiam) (holding that private health care professionals and a private hospital did not engage in state action when they involuntarily committed the plaintiff to the psychiatric ward of Columbia Presbyterian Medical Center."); *Chance v. Machado*, No. 08-CV-774 (CSH), 2009 WL 3416422, at *2 (D. Conn. Oct. 22, 2009) (dismissing § 1983 claims against doctors employed by Bridgeport Hospital, which is privately owned, for failure to allege state action).

In *Doe*, the Second Circuit affirmed the district court's holding that Columbia Presbyterian Medical Center was not a state actor for purposes of § 1983 and thus did not act under color of state law. In reaching this conclusion, the lower court reasoned that the New York State statute under which the plaintiff was committed "provides the legal framework under which physicians may involuntarily commit a patient by creating procedures and standards for commitment," but "leaves the decision to commit completely to the physician's discretion." *Doe v. Rosenberg*, 996 F. Supp. 343, 350 (S.D.N.Y. 1998). Therefore, the court concluded, "the actions of the Hospital Defendants cannot be attributed to the State under a theory of state compulsion." *Id.* at 352.

Courts in this District similarly have held that Connecticut General Statutes § 17a-502(a), which provides that an individual "may be confined" to a mental hospital if a physician concludes that such individual "has psychiatric disabilities and is dangerous to himself or others or [is] gravely disabled and is in need of immediate care and treatment," Conn. Gen. Stat. § 17a-502(a), relies on the exercise of a private physician's discretion and thus "does not convert that physician's conduct into state action" under § 1983, *Alicea v. Yang*, No. 3:21-CV-01638 (KAD), 2022 WL 2527994, at *3 (D. Conn. July 7, 2022); *see also Edwards*, 2006 WL 3618021, at *3 (concluding that physician's conduct under Connecticut General Statutes § 17a-502 did not

33

constitute state action where "[n]othing in the statute either forces or encourages involuntary commitments, and the ultimate decision of whether to involuntarily commit someone is left to the medical judgment of the physicians, according to professional standards").

Ms. Li alleges that St. Vincent's Medical Center authorized her involuntary commitment on June 29, 2020 at 3:30 a.m., before Officer Peck allegedly arrived at her home that same day at 5:10 a.m. *See* Am. Compl. at 18 ¶ 52, 41 ¶ 37. Thus, according to Ms. Li's allegations, SVMC, as opposed to Officer Peck, authorized her involuntary commitment at SVMC.

Accordingly, the Amended Complaint does not provide a basis from which to conclude that SVMC or its personnel involuntarily committed Ms. Li under color of state law, and Ms. Li's § 1983 claims against the SVMC Defendants will be dismissed.[4] *See Andersen v. N. Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, No. 12-CV-1049 (JFB) (ETB), 2015 WL 1443254, at *12 (E.D.N.Y. Mar. 26, 2015) (holding that the plaintiff had failed to allege state action by a private hospital and its personnel where the complaint "allege[d] that it was the Hillside physicians who used their own discretion to commit her"), *aff'd sub nom. Andersen v. N. Shore Long Island Jewish Health Sys.'s Zucker Hillside Hosp.*, 632 F. App'x 13 (2d Cir. 2016) (summary order); *Edwards*, 2006 WL 3618021, at *3 ("The fact that Connecticut's involuntary commitment statute authorizes private physicians and hospitals to

---

[4] SVMC Defendants I and SVMC Defendants II also argue that they are entitled to dismissal of all claims against them due to improper service of process under Federal Rule of Civil Procedure 12(b)(5). SVMC Defs. I Mot. at 11–12; SVMC Defs. II Mot. at 12–13. Specifically, these defendants argue that Ms. Li's return of service indicates that service of process was made by service upon Corporation Service Company, which the defendants allege is not an agent authorized by appointment or by law to receive service of process on their behalf. *Id.* The address on Ms. Li's affidavit—the only evidence of service on SVMC Defendants I and SVMC Defendants II—does not match the addresses in the Amended Complaint or summons for these individuals, and Ms. Li has not rebutted the defendants' claim that Corporation Service Company is not a registered agent for the SVMC employees. *See* Am. Compl. at 2–5; First Summons Return Executed, ECF No. 16 (Oct. 25, 2021); First Summons Return Executed, ECF No. 16-1 (Oct. 25, 2021); First Summons Return Executed, ECF No. 16-2 (Oct. 25, 2021). Because there is no evidence that SVMC Defendants I and SVMC Defendants II were properly served, the Court will grant these defendants' motions to dismiss on this additional basis. *See Madej*, 2021 WL 7906552, at *1 (holding that the defendant was not properly served where the complaint and affidavit of service contained conflicting addresses, and the plaintiff had not rebutted the defendant's contention that the recipient of the summons and complaint was not its registered agent).

perform involuntary commitments does not constitute state influence over physicians' decisions to commit patients.").

### c.  Lei Li

For the same reasons discussed above with respect to SVMC, the Amended Complaint also does not provide a basis from which to infer that Lei Li is a state actor in order to provide for a viable § 1983 claim. *See* Am. Compl. at 22 ¶ 71 (alleging, without elaboration, that Dr. Orelup of SVMC "fabricated a COVID-19 related medical records [*sic*] together with . . . Lei Li"). Indeed, the specific allegations here, alleged violations of federal statutes, do not alone give rise to a viable § 1983 claim. *See Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 322 (2d Cir. 2005) ("The Supreme Court has clarified that . . . 'it is only violations of *rights*, not *laws*, which give rise to § 1983 actions,' and the Court has rejected an interpretation of *Blessing* [*v. Freestone*, 520 U.S. 329 (1997)] that 'our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983'" (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002))).

Accordingly, any claims against Lei Li must be dismissed on this basis as well.

### 3.  The Town Defendants

The Court will first address the Town Defendants' entitlement to qualified immunity, before considering each of the Town Defendants' alleged grounds for dismissing the Amended Complaint.

### a.  Qualified Immunity

The Town Defendants argue that any remaining federal claims against them should be dismissed because they are entitled to qualified immunity. Because Ms. Li's § 1983 claims arising from the 2016 incident are untimely, and because she does not allege that any of the

Town Defendants other than Officer Peck was involved in the 2020 incident, the Court addresses the Town Defendants' qualified immunity argument only as it relates to Officer Peck.

"Qualified immunity shields government officials from claims for money damages unless a plaintiff adduces facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Id.* "Specifically, the law must be so clearly established with respect to the 'particular conduct' and the 'specific context' at issue that 'every reasonable officer would have understood that his conduct was unlawful.'" *Id.* at 68–69 (emphasis omitted) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 542 U.S. 194, 198 (2004)).

"While qualified immunity may be 'successfully asserted' on a motion to dismiss the complaint, the defense 'faces a formidable hurdle' at the pleading stage." *Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021) (citing *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)). For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna*, 386 F.3d at 436 (internal citations and quotation marks omitted). In considering qualified immunity on a motion to dismiss, the court draws all reasonable inferences in favor of the plaintiff both from the facts alleged in the complaint that support the plaintiff's claim and those that would defeat the qualified immunity defense. *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

The Town Defendants argue that they are entitled to qualified immunity because they did not violate a clearly established right. Town Defs. Mot. at 16. Specifically, the Town Defendants argue with respect to the 2020 incident that Ms. Li's "hallucinations of monsters that prompted her to request a police presence at her home at 5:00 a.m." and "her efforts to wake up her family and place bath towels under the doors in her home" justified her transport to St. Vincent's Medical Center under Connecticut General Statutes § 17a-503(a). *Id.* at 42. The Town Defendants further argue that their actions at the scene, including calling AMR to assess Ms. Li's mental condition, were objectively reasonable under the circumstances. *Id.*

The Court disagrees.

Construed liberally, *see Sykes*, 723 F.3d at 403, the Amended Complaint alleges that Officer Peck violated Ms. Li's Fourth Amendment right to be free from an unreasonable seizure

when he and another officer caused her to be transferred to St. Vincent's Medical Center against her will. Am. Compl. at 49 ¶ 96–49 ¶ 97. "It is well-established that an involuntary hospitalization can amount to a 'seizure' under the Fourth Amendment, and as such, 'the Fourth Amendment requires an official to have probable cause to believe that a person is dangerous to himself or others before he can seize and detain such person for a psychiatric evaluation.'" *Brown v. Catania*, No. 3:06-CV-73 (PCD), 2007 WL 879081, at *5 (D. Conn. Mar. 21, 2017) (quoting *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993)). Connecticut law also provides that "[a]ny police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section." Conn. Gen. Stat. § 17a-503(a).

Probable cause in this context requires a police officer to have "reasonable grounds for believing that the person seized is dangerous to herself or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (internal citation and quotation marks omitted). Under the Fourth Amendment, there must be a "probability or substantial chance of dangerous behavior, not an actual showing of such behavior," *Waananen v. Barry*, 343 F. Supp. 2d 161, 170 (D. Conn. 2004) (internal citation and quotation marks omitted), but in any event, "[t]he quantum of evidence necessary to establish probable cause must constitute 'more than rumor, suspicion, or even strong reason to suspect,'" *Brown*, 2007 WL 879081, at *5 (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983)).

Taking the facts alleged in the Amended Complaint as true, as the Court must on a motion to dismiss, the Town Defendants have not shown that Ms. Li can prove no set of facts in

support of her claim that would entitle her to relief. Ms. Li alleges that upon arriving at her home, Officer Peck made no effort to "get to know the situation" or "inspect the house" and instead "restrained [her] and [her] husband separately in [their] yard." Am. Compl. at 18 ¶ 52. She further alleges that Officer Peck "blocked [her] way back to [her] house" and "threatened and forced [her]" into an ambulance, despite Ms. Li's statements that she did not want to be taken to SVMC. *Id.* at 18 ¶ 53. On these facts, Ms. Li has plausibly alleged that Officer Peck did not have reasonable grounds to suspect that she suffered from a psychiatric disability, and that it was not objectively reasonable for Officer Peck to authorize her involuntary transport to SVMC. *See Matthews v. City of New York*, No. 15-CV-2311 (ALC), 2016 WL 5793414, at *4 (S.D.N.Y. Sept. 30, 2016) (finding that the plaintiff had sufficiently alleged that the city defendants lacked probable cause for her arrest and hospitalization, based on allegations that "her behavior did not suggest she was in need of medical or psychiatric care, under the influence of drugs, or mentally ill").

The Town Defendants argue that because the Amended Complaint refers to and includes quotations from the incident reports written by Officer Peck ("Peck Report") and Officer Newkirchen ("Newkirchen Report"), *see* Ex. B to Fairfield Defs.' Mot. to Dismiss, ECF No. 50-4 (Dec. 13, 2021); Ex. C to Fairfield Defs.' Mot. to Dismiss, ECF No. 50-5 (Dec. 13, 2021), the Court can consider the police investigation documents as materials integral to the Amended Complaint, Town Defs. Mot. at 9–10. They contend that Ms. Li's allegations regarding the 2020 incident are contradicted by the Peck Report and demonstrate that Officer Peck had a reasonable basis to believe that Ms. Li had a psychiatric condition that warranted transportation to St. Vincent's Medical Center. *Id.* at 42–43.

Subject to "some narrow exceptions," however, "the motion-to-dismiss stage is not an appropriate time for a defendant to submit evidence in an effort to contradict a plaintiff's allegations." *Mack v. Morse*, No. 3:19-CV-0430 (LEK/ML), 2021 WL 1146125, at *4 (N.D.N.Y. Mar. 25, 2021). Even taking the incident reports into consideration, the reports do not, at this stage of the proceedings, establish that Officer Peck is entitled to qualified immunity. Indeed, Ms. Li challenges the veracity of the Peck and Newkirchen Reports. *See, e.g.*, Am. Compl. at 45 ¶ 62–48 ¶ 88. Officer Peck's entitlement to qualified immunity is therefore more appropriately addressed at the summary judgment stage, "once the Court has a more developed factual record to consider." *See Kaplan v. County of Orange*, 528 F. Supp. 3d 141, 167 (S.D.N.Y. 2021) (denying motion to dismiss based on qualified immunity); *see also Nicosia v. Amazon, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) ("Even where a document is considered 'integral' to the complaint . . . [i]t must also 'be clear that there exist no material disputed issues of fact regarding the relevance of the document.'" (citation omitted)); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2005) ("The streamlined testing of the substantive merits . . . is more appropriately reserved for the summary judgment procedure, governed by [Federal Rule of Civil Procedure] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule." (internal citation and quotation marks omitted)).

Accordingly, the Town Defendants' motion to dismiss the Amended Complaint on the basis of qualified immunity will be denied.

### b.  The Monell Claim

A municipality is only subject to liability under § 1983 when the violation of the plaintiff's federally protected right is attributable to the enforcement or execution of a municipal

policy, practice, or custom. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). Instead, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citation and quotation marks omitted). Furthermore, "plaintiffs must show that the official policy, practice or custom was the 'moving force [behind] the constitutional violation,' which is to say that it actually caused the constitutional deprivation." *Hernandez v. Conn. Ct. Support Servs. Div.*, 726 F. Supp. 2d 153, 156–57 (D. Conn. 2009) (internal citations omitted).

Ms. Li alleges that the Fairfield Police Department "failed to provide fundamental training to its officers" in the area of "[m]ultinational culture and customs" and "[d]iversity and nondiscrimination." Am. Compl. at 48 ¶ 89–48 ¶ 90.

The Town Defendants argue that Ms. Li has "pleaded no facts that can establish *Monell* liability against it based on the purported conduct" of the defendant officers. Town Defs. Mot. at 36.

The Court agrees.

In order for municipal liability to attach under § 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton*,

489 U.S. at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). Without evidence of a pattern of similar violations to provide "notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

In this case, Ms. Li fails to raise sufficient facts to demonstrate that the Town of Fairfield had actual or constructive notice of systematic discriminatory behavior by its officers. The Amended Complaint alleges only that Ms. Li (1) attended a "Stop [A]sian [H]ate" rally at the Fairfield Town Hall, and (2) complained to the Fairfield Town Hall that she felt "discriminated against and disregarded" when she was involuntarily committed in 2016. Am. Compl. at 48 ¶ 91– 48 ¶ 92. These allegations, without more, are insufficient to state a failure to train claim. *See Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (granting motion to dismiss "[b]ecause the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff"); *Stengel v. City of Hartford*, 652. F. Supp. 572, 575 (D. Conn. 1987) (dismissing count predicated on the existence of a custom or policy condoning and authorizing the application of excessive force, where the plaintiffs alleged that the complaints had been filed with the police department against the officer on two prior occasions but no disciplinary action was taken).

Accordingly, Ms. Li's § 1983 claims against the Town of Fairfield will be dismissed.

### c.  The Unlawful Seizure and False Imprisonment Claims

For the reasons explained above, Ms. Li has sufficiently alleged that Officer Peck lacked probable cause to cause her to be taken to SVMC and therefore has stated an unreasonable

seizure claim under § 1983. Ms. Li alleges that upon arriving at her home, Officer Peck made no

effort to "get to know the situation" or "inspect the house" and instead "restrained [her] and [her]

husband separately in [their] yard." Am. Compl. at 18 ¶ 52. She further alleges that Officer Peck

"blocked [her] way back to [her] house" and "threatened and forced [her]" into an ambulance,

despite Ms. Li's statements that she did not want to be taken to SVMC. *Id.* at 18 ¶ 53. On these

facts, Ms. Li has plausibly alleged that Officer Peck did not have probable cause to detain her for

a psychiatric evaluation, and that it was not objectively reasonable for him to authorize her

involuntary transport to SVMC.

To the extent Ms. Li alleges a false imprisonment claim against the Fairfield Police

Department, *see* Am. Compl. at 14, Ms. Li may not bring suit against a municipal department or,

under *Monell*, the Town of Fairfield.

Accordingly, Ms. Li's false imprisonment claim against the Fairfield Police Department

under § 1983 will be dismissed.

### d.  The Substantive Due Process Claim

"Substantive due process standards are violated only by conduct that is so outrageously

arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*,

170 F.3d 258, 263 (2d Cir.1999). "Where a particular Amendment 'provides an explicit textual

source of constitutional protection' against a particular sort of government behavior, 'that

Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing' such a claim.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks

omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, to the extent Ms. Li raises a Fifth Amendment substantive due process claim

against the Town Defendants, *see* Am. Compl. at 49 ¶ 98, it appears to be premised on her

allegations of involuntary commitment at SVMC in June 2020, and "is pleaded alongside" her Fourth Amendment unlawful seizure claim, *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 625 (S.D.N.Y. 2015), *aff'd*, 665 F. App'x 49 (2d Cir. 2016) (summary order). "A plaintiff cannot succeed on a substantive due process claim where the state action in question is a Fourth Amendment seizure." *Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 237 (E.D.N.Y. 2015) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 843–844 (1998); *Terranova v. New York*, 144 F. App'x 143, 147 (2d Cir. 2005)); *see also Matthews*, 2016 WL 5793414, at *6 (granting the defendant's motion to dismiss as it pertains to the substantive due process claims, "[i]n light of the Supreme Court's prior admonition against creating substantive due process rights where other Amendments provide relief . . . ."); *Heller*, 144 F. Supp. 3d at 625 (holding that the plaintiff's substantive due process claim "sounds in the Fourth Amendment, and [thus] it is the Fourth Amendment that provides an explicit textual source of constitutional protection against the particular sort of behavior at issue").

Accordingly, because Ms. Li's "complained-of conduct occurred in the course of [Officer Peck's] seizure of [her]," *Greenaway*, 97 F. Supp. 3d at 237, Ms. Li cannot allege a violation of substantive due process against the Town Defendants, and this claim will be dismissed.

### e.  The Abuse of Process Claim

Section 1983 liability "may not be predicated on a claim of malicious abuse of . . . civil process." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (emphasis omitted) (internal quotation marks omitted) (quoting *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994)). "[S]ection 1983 liability may lie," however, "for malicious abuse of criminal process." *Cook*, 41 F.3d at 80. "The torts of malicious prosecution and abuse of process are closely allied. While

malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Id.* (citation omitted).

"In a § 1983 claim alleging malicious abuse of criminal process, the elements are drawn from applicable state law." *Pal v. Cipolla*, No. 3:18-CV-616 (MPS), 2020 WL 6881455, at *18 (D. Conn. Nov. 23, 2020) (citing *Cook*, 41 F.3d at 79–80), *aff'd*, No. 20-4222-CV, 2022 WL 766417 (2d Cir. Mar. 14, 2022). "Under Connecticut law, a plaintiff claiming malicious abuse of process must show that legitimate legal process was used 'primarily to accomplish a purpose for which it was not designed.'" *Wall v. Cetran*, 100 F.3d 943, 1996 WL 47974, at *2 (2d Cir. 1996) (unpublished opinion) (emphasis omitted) (quoting *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987)). "Under this standard, liability will not attach where the process is used for the purpose for which it was intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* (internal citation and quotation marks omitted); *see also Zak v. Robertson*, 249 F. Supp. 2d 203, 209 (D. Conn. 2003) ("An improper motive alone cannot support a claim for abuse of process unless the plaintiff demonstrates that the defendant intended to achieve some end result that is distinct from criminal punishment (i.e. fine and/or imprisonment).").

To the extent Ms. Li alleges that her transport to SVMC in June 2020 constitutes malicious abuse of process, Ms. Li has not plausibly alleged that Officer Peck "used [a] legitimate legal process primarily to accomplish a purpose for which it was not designated." *Pal*, 2020 WL 6881455, at *19 (citing *Miles v. City of Hartford*, 445 F. App'x 379, 384 (2d Cir. 2011) (summary order) (affirming summary judgment where the plaintiff "provided no evidence to show that [the defendant officer's] primary reason for proceeding against her was improper")). Even assuming Officer Peck issued a request to transport Ms. Li under Connecticut General

Statutes § 17a-503(a), and that this request constitutes use of legal process, Officer Peck

allegedly used the procedures set forth in § 17a-503(a) for the purpose for which they are

intended: to cause Ms. Li to be transported to a hospital for examination.

Accordingly, Ms. Li's § 1983 abuse of process claim against the Town Defendants will

be dismissed.

### 4.  The AMR Defendants

"Private employers are not liable under § 1983 for the constitutional torts of their

employees." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (citing

*Monell*, 436 U.S. at 691). "Although the Supreme Court's interpretation of § 1983 in *Monell*

applied to municipal governments and not to private entities acting under color of state law,

caselaw . . . has extended the *Monell* doctrine to private § 1983 defendants acting under color of

state law." *Tutora v. Aramark Corr. Servs.*, No. 17-CV-9170 (KMK), 2022 WL 2237567, at *6

(S.D.N.Y. June 22, 2022) (internal citation and quotation marks omitted). Therefore, "to recover

under § 1983 against a private entity, a plaintiff must demonstrate that an action pursuant to

some official policy caused the deprivation." *Id.* (citing *Rojas*, 924 F.2d at 409 ("[T]o recover

under § 1983, it is not enough for [the plaintiff] to show that his arrest . . . was without probable

cause.")).

In this case, Ms. Li has not set forth any facts alleging that an official policy of AMR's

caused the alleged constitutional violations by its employees. Thus, AMR cannot be held liable

under § 1983 based on a theory of *respondeat superior*, and Ms. Li's § 1983 claims against

AMR will be dismissed. *See White v. Moylan*, 554 F. Supp. 2d 263, 268 (D. Conn. 2008)

(dismissing Macy's Department Store as a defendant where the plaintiff had "fail[ed] to set forth

any facts alleging that Macy's caused the alleged constitutional violation by its security directors").

The Court will permit, however, Ms. Li's claim of unreasonable seizure under § 1983 against Mr. D'Lorio to proceed. The Amended Complaint alleges that upon arriving at the scene, Mr. D'Lorio, together with Officer Peck, "tied [Ms. Li] to a stretcher in the ambulance" to be transported to SVMC without her consent. Am. Compl. at 18 ¶ 53. Because Ms. Li does not allege that Mr. Zwally or Mr. Jackson was involved in causing Ms. Li's transport to SVMC in 2020, the § 1983 claims against these defendants will be dismissed.[5]

### F. State Law Claims

Ms. Li's remaining claims all arise under state law. Consequently, before reaching the merits of these claims, the Court must determine whether to exercise supplemental jurisdiction over them.

Under 28 U.S.C. § 1367(a),

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Federal and state claims form part of the "same case or controversy," and thus satisfy 28 U.S.C. § 1367(a), if they "derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerey & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal citation and quotation marks

---

[5] To the extent Ms. Li alleges that Defendants violated the Fifth and Sixth Amendments to the U.S. Constitution, *see* Am. Compl. at 49 ¶ 98–49 ¶ –99, she has not stated a viable claim. "The Sixth Amendment, by its terms, applies only to criminal proceedings, as do the relevant provisions of the Fifth Amendment." *Fisk v. Letterman*, 501 F. Supp. 2d 505, 521 (S.D.N.Y. 2007). "Although the Fifth Amendment privilege against self-incrimination may be asserted in civil proceedings, 'a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case.'" *Id.* (quoting *Chavez v. Martinez*, 538 U.S. 760, 770 (2003)). Insofar as Ms. Li raises a substantive due process claim under the Fourteenth Amendment against the AMR Defendants, this claim sounds in the Fourth Amendment and, for the reasons above, must be dismissed.

omitted). "When a federal claim is raised against one party and a state claim is raised against another party, section 1367(a) 'makes pendent party jurisdiction possible where the [state] claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 613 F. Supp. 2d 437, 441 (S.D.N.Y. 2009) (quoting *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000)).

If the requirements in § 1367(a) are satisfied, district courts "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if," *inter alia*, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (internal citation omitted).

In this case, the Court has original jurisdiction over Ms. Li's unreasonable seizure claim against Officer Peck and Mr. D'Lorio, arising from her allegedly forced transfer to SVMC for a psychiatric evaluation on June 29, 2020. The Court does not, however, have original jurisdiction over Ms. Li's federal claims insofar as they relate to her allegations regarding the 2016 incident.

Although Ms. Li alleges that the 2016 and 2020 incidents form part of the same conspiracy, she does so only in conclusory terms, and alleges no facts in support of this conclusion, such as an agreement among Defendants, over a four-year period, to cause her involuntary commitment at SVMC. *See Charter Oak Lending Grp., LLC v. Aug.*, 127 Conn.

App. 428, 447 (2011) ("Under a civil conspiracy theory, the requisite elements are: '(1) a

combination between two or more persons, (2) to do a criminal or unlawful act or a lawful act by

criminal or unlawful an  means, (3) an act done by one or more of the conspirators pursuant to

the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.'"

(internal citation omitted)). Indeed, the only similarity between the two incidents appears to be

Ms. Li's alleged involuntary commitment at SVMC in both 2016 and 2020. This similarity alone

is insufficient to conclude that Ms. Li's state law claims relating to the 2016 incident and her

remaining federal claim relating to the 2020 incident "derive from a common nucleus of

operative fact." *Achtman*, 464 F.3d at 335.

 Accordingly, the Court does not have supplemental jurisdiction over Ms. Li's state law

claims arising from the 2016 incident, and these claims will be dismissed. *See Jafri v. Town of

New Canaan*, No. 3:21-CV-00963 (KAD), 2022 WL 344230, at *3 (D. Conn. Feb. 4, 2022)

(concluding that the court did not have supplemental jurisdiction where "[t]he claims against the

Media Defendants are wholly separate and distinct, factually and legally, from the claims against

the Town Defendants," and noting that "[t]he [p]laintiff brings, essentially, two different lawsuits

within a single case"); *Azevedo v. Club Getaway, Inc.*, No. 3:06-CV-1222 (VLB), 2008 WL

350479, at * 2 (D. Conn. Feb. 7, 2008) (finding no supplemental jurisdiction "[a]s there is no

common nucleus of operative facts, nor any overlap between the facts necessary to prove the

claims in the complaint and the third party complaint").

 As for Ms. Li's state law claims arising from the 2020 incident, Ms. Li alleges: (1)

wrongful involuntary psychiatric commitment and false imprisonment against the Fairfield

Police Department, AMR, and SVMC; (2) illegal involuntary commitment; (3) forged false

statements and certificates against AMR, Officer Peck, Mr. Zwally, and Mr. Jackson; and (4)

wrongful arrest under Sections 1, 7, and 9 of the Connecticut Constitution. Am. Compl. at 41–49.

These claims form part of the same case or controversy as the remaining federal claim against Officer Peck and Mr. D'Lorio: Ms. Li's involuntary transfer to and commitment at SVMC. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 510 F. Supp. 2d 299, 326 (S.D.N.Y. 2007) (concluding that the state and federal claims formed part of the same case or controversy where "the common threads running through the claims . . . are numerous and overlapping" and "a party would ordinarily expect all of them to be resolved in one proceeding"). The Court therefore has jurisdiction under § 1367(a) over Ms. Li's state law claims relating to the 2020 incident, and will address each of her claims in turn.

The Court construes Ms. Li's wrongful involuntary psychiatric commitment and false imprisonment claim against the Fairfield Police Department, AMR, and SVMC as a common law claim of false imprisonment. Under Connecticut law, "false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267 (1982). "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability." *Berry v. Loiseau*, 223 Conn. 786, 820 (1992) (internal citation and quotation marks omitted). "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Lo Sacco v. Young*, 20 Conn. App. 6, 19 (1989), *cert. denied*, 213 Conn. 808 (1989).

Ms. Li's state and federal claims against the Fairfield Police Department, for the reasons described above, are dismissed in their entirety. Although the federal claims against AMR and SVMC have been dismissed, the unreasonable seizure claim against Officer Peck and Mr.

D'Lorio remains pending. Ms. Li's false imprisonment and unreasonable seizure claims are based on substantially the same set of facts: her transfer to and involuntary commitment at SVMC in 2020. "Thus, in the interest of judicial economy, the state and federal claims should be tried together." *Ziemba v. Lajoie*, No. 3:11-CV-845 (SRU), 2012 WL 4372245, at *6 (D. Conn. Sept. 24, 2012) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966) (federal courts should retain jurisdiction of state law claims under theories of judicial economy and fairness to litigants where state and federal claims are closely linked and state claw claims do not substantially predominate); *Advance Relocation & Storage Co., Inc. v. Local 814, Int'l Bhd. of Teamsters, AFL–CIO*, No. CIV.A. 03CV4475DGTJM, 2005 WL 665119, at *11 (E.D.N.Y. Mar. 22, 2005) (retaining supplemental jurisdiction over state claims against one defendant against whom federal RICO claims had been dismissed because state claims and RICO claims derived from same facts and RICO claims remained pending against other defendants)). Thus, the Court will not dismiss at this stage of the case Ms. Li's state law claim of false imprisonment, insofar as it arises from allegations relating to the 2020 incident, against AMR and SVMC.[6]

For the same reason, Ms. Li's state law claims under Article First, Sections 7 and 9 of the Connecticut Constitution will proceed. There is no private right of action under the equal protection provision, Article First, Section 1, of the Connecticut Constitution. *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) (citing *Kelley Prop. Dev., Inc. v. Lebanon*, 226 Conn. 314, 339 (1993)). The Connecticut Supreme Court has recognized, however, a private cause of action for monetary damages under Article I, Sections 7

---

[6] SVMC argues that it is immune from liability for false imprisonment because it admitted Ms. Li under a valid Physician Emergency Certificate ("PEC") that was issued under Connecticut General Statute § 17-502(a). SVMC Mot. at 19 (citing *Felix v. Halle-Brooke Sanitorium*, 140 Conn. 496 (1953)). Assuming, without deciding, that a valid PEC would entitle SVMC to immunity in this case, the issue of whether Ms. Li was admitted under a valid PEC is a factual question that is more appropriately addressed at the summary judgment stage.

and 9 "where the claims arose out of unreasonable searches and seizures and unlawful arrest by

police officers." *Stevenson v. Quiros*, No. 3:20-CV-01518 (VLB), 2020 WL 7188607, at *7 (D.

Conn. Dec. 7, 2020) (citing *Binette v. Sabo*, 244 Conn. 23, 47–49 (1998)).

Ms. Li alleges that her state constitutional claims are founded upon her alleged "illegal

det[ention]" and "involuntary commitment" at SVMC. Am. Compl. at 49 ¶ 95. In the interest of

judicial economy, and under its "inherent authority to manage [its] docket[] and courtroom[]

with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 136 S. Ct.

1885, 1892 (2016), the Court will not dismiss Ms. Li's state constitutional claims under Article I,

Sections 7 and 9. Because the claims against the State Defendants, Dr. Bansal, Dr. Sandrew, Lei

Li, the Fairfield Police Department, FECC, SVMC Defendants I, and SVMC Defendants II have

been dismissed in their entirety, and as Ms. Li does not raise any allegations against Mr.

Formato, Mr. Rhodes, Officer Newkirchen, and Officer Kovac with respect to the 2020 incident,

Ms. Li's state constitutional claims will only proceed, however, against Officer Peck, Mr.

D'Lorio, the Town of Fairfield, AMR, and SVMC.

Finally, the Amended Complaint appears to allege a civil forgery claim under

Connecticut General Statutes § 52-565, which provides that "[a]ny person who falsely makes,

alters, forges, or counterfeits any document, or knowingly utters, as true, any document falsely

made, altered, forged or counterfeited, shall pay double damages to any party injured thereby."

Conn. Gen. Stat. § 52-565. Although Ms. Li alleges that certain statements in the Fairfield Police

Department reports and AMR medical reports are false, she does not identify any document that

was allegedly forged.

Accordingly, Ms. Li has not stated a civil forgery claim under § 52-565, and the claim

will be dismissed. *See Carty v. High Precision, Inc.*, No. CV145034775S, 2015 WL 4098224, at

*11 (Conn. Super. Ct. June 3, 2015) (dismissing civil forgery claim where "[t]he plaintiff has

identified no document that was allegedly forged, nor has he alleged injury by such forgery");

*Peterson v. Hume*, No. HHDCV115035394S, 2013 WL 2451261, at *5 (Conn. Super. Ct. May

14, 2013) (dismissing claim for statutory forgery where the plaintiff "pled facts alleging that

certain instruments were untrue, but not inauthentic").

## IV.    CONCLUSION

For the foregoing reasons, the State Defendants' [26] motion to dismiss, Lei Li's [47]

motion to dismiss, Dr. Bansal's [57] motion to dismiss, Dr. Sandrew's [68] motion to dismiss,

SVMC Defendants I's [113] motion to dismiss, and SVMC Defendants II's [116] motion to

dismiss are **GRANTED**.

The Town Defendants' [50] motion to dismiss, the AMR Defendants' [94] motion to

dismiss, and St. Vincent's Medical Center's [111] motion to dismiss are **GRANTED in part** and

**DENIED in part**.

Ms. Li's unreasonable seizure claim against Officer Peck and Mr. D'Lorio under § 1983;

state law claim of false imprisonment against American Medical Response, Inc. and St.

Vincent's Medical Center; and state constitutional claims under Article I, Section 7 and 9 of the

Connecticut Constitution against Officer Peck, Mr. D'Lorio, the Town of Fairfield, American

Medical Response, Inc., and St. Vincent's Medical Center will proceed.

All other Defendants who have appeared in this action are dismissed.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of August, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE